## BENJAMIN S. PRETTYMAN, Plaintiff in Error, *v.* JAMES G. GOODRICH *et al.*, Defendants in Error.

### ERROR TO TAZEWELL.

The alteration of a deed by the consent of the husband, after it had been executed and acknowledged, might render it void as to the wife, but not as to the husband.

Where it appeared that a deed had been altered after it had been executed and acknowledged, by the insertion of additional tracts of land, and that the grantor had consented to the alteration, and after the alteration had taken the deed and left it for record: *Held,* that the latter fact amounted to a second delivery of the deed, and that it thereby became valid.

THIS was a proceeding in chancery, commenced in the Tazewell Circuit Court, HARRIOTT, Judge, presiding, Prettyman, who was the complainant, alleging that he was a *bona fide* purchaser of certain lands in Tazewell and Mason counties, which had been conveyed to him by one Trent; and that said Trent had, before that time, given a trust deed to the defendants, Willard, Goodrich and others, by the instrumentality of Samuel W. Fuller, who had been his counsel and attorney, and who was also acting as the attorney of Willard and others in collecting a debt from Trent, and to secure which the deed of trust, sought to be set aside in pursuance of the prayer of Prettyman's bill, had been given. Prettyman alleged that Fuller had inserted a description of lands in the deed after it had been executed by Trent and wife, without the knowledge and consent of Trent, and that the insertion of these lands was in fraud of Prettyman, and a cloud upon his title, and he therefore prayed that the trust deed should be declared a nullity. It appeared that Fuller had inserted the lands in question in the trust deed by the consent of Trent, and that after the description of these lands had been inserted, Trent took the deed to the recorder's office, and left it for record.

B. S. PRETTYMAN, *Pro se.*

S. W. FULLER, S. D. PUTERBAUGH, and J. ROBERTS, for Defendants in Error.

CATON, C. J. The proof does not convince us that Trent was fraudulently induced to execute the deed of trust, supposing it to be but an ordinary mortgage. We are satisfied that he fully understood what the paper was, and its effect, at the time he executed it.

Did the alterations made in the deed of trust, after it was executed and recorded, render it inoperative and void as to

Trent? From a very careful examination of the testimony in the original record, we find that at the time the deed was executed and acknowledged by Trent and wife, and recorded in Mason, it only contained lands in Mason county. Afterwards, Trent's creditors being dissatisfied with the security, he expressed a willingness to give them, as additional security, as many of his Tazewell county lands as they thought necessary, and told Fuller, their attorney, that his deeds for the Tazewell county lands were in the hands of Puterbaugh; that he might get those deeds and insert in the trust deed as many of them as he chose. In pursuance of this verbal authority, Fuller made selections of the Tazewell county lands from the deeds, and inserted them into the original trust deed. After this, at the request of Trent, both Fuller and Puterbaugh struck out of the trust deed some lands and inserted others in their stead; and after the last change was made by Puterbaugh in Trent's presence, Trent took the deed to the recorder's office and had it again recorded. After stating that he had inserted the two last lots named in the deed, in the presence of and at the request of Trent, the witness says: " Trent agreed to pay the recording, and at my request, he went with me to the circuit clerk's office, and left the deed for record. Trent, at the time, either paid for the recording or told the clerk to do so, which was done." At this time, Trent knew what lands had been inserted by Fuller, or under his direction, in pursuance of the parol authority given him by Trent, and had never expressed the least dissatisfaction or disapprobation at what had been done by Fuller in inserting the Tazewell county lands in the deed. Trent was never present when any of these lands were inserted in the deed, except on the 23rd of July, 1857, when the two last lots were inserted in his presence, and when he took the deed to the recorder's office for record. Afterwards, he did express dissatisfaction to Fuller that the Moore farm was inserted, and wanted Fuller to release it and insert other lands in its stead, but which he declined to do. Upon this state of facts we have to decide whether this deed of trust was rendered void by reason of the alteration thus made, so as to vest Trent's title in his subsequent grantee, unincumbered by the deed of trust. As to the dower interest of Mrs. Trent, there can be no doubt that the alteration of the deed, after it was executed and acknowledged by her, rendered it absolutely void; and it is insisted that if the deed is void as to her, it must be so as to her husband, for a deed cannot be good in part and void in part. This legal proposition is not always if it is generally true. Suppose this alteration had been made by Trent himself, with his own hand, it would have been binding on him, though void as to his wife.

With the view we take of the case, we do not deem it necessary to say whether the parol authority, which Fuller received from Trent to insert these Tazewell county lands, was such authority as made the deed binding on Trent after it was done. The evidence shows that after all the alterations had been made, and when Trent knew what lands were described in the deed, he went with the attorney of the grantee to the recorder's office and left the deed for record, and paid, or agreed to pay, for the recording. He did this with the intention, expectation, and purpose that it was and should be a valid, subsisting and complete deed, according to its purport. This was a new delivery of the deed, and if from the time Fuller inserted the Tazewell county lands till then, it was never so void, it then became valid and binding as if a new deed had been written, executed and delivered by him. From that time forth we must hold this a good deed, irrespective of the parol authority which Fuller had to make the alterations, and of the oft-repeated declarations of approval of the deed, after he was well advised of the lands which Fuller had inserted. It would no doubt be very difficult to get over the very strong and pointed proof of a ratification of the alteration by Trent, but we choose to place our decision upon the second delivery of the deed, of which fact the proof well satisfies us, and which places the decision upon a point of which there can be no sort of doubt.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*