State v. Paxton.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

STATE OF NEBRASKA V. WILLIAM A. PAXTON ET AL.

FILED JUNE 4, 1902.  No. 12,217.

Commissioner's opinion, Department No. 2.

1. Law of the Case. The rule that a decision of this court is the law of the case, not only as to the points expressly considered in the opinion but as to all matters necessarily involved in the judgment rendered, has not the same application where the evidence at successive trials of the same cause is so materially different as to affect the conclusions reached.

2. Questions of Law. Where the evidence at a new trial is, or may be presumed to be, materially different from that at a trial already reviewed by this court, in a subsequent review it will investigate the record uninfluenced by the former decision, except so far as questions of law were there adjudicated, which apply equally to the evidence at each trial.

3. Bond: CONSIDERATION. A bond executed pursuant to and in substantial conformity with the provisions and requirements of a statute, needs no consideration to support it.

4. Undertaking: STATUTE: CONTRACT: COMMON LAW. An undertaking not within the purview of the statute, may nevertheless be upheld as a common-law contract, if otherwise unobjectionable and supported by a consideration.

5. Official Bond: APPROVAL: TIME. Under section 15, chapter 10, Compiled Statutes, an official bond must be approved, as well as executed and filed within the time fixed by law. Such approval should come before filing, and neglect to procure approval of the bond renders the office vacant, if forfeiture is insisted upon, although the bond is duly executed and filed.

6. ———: ———: ———: WAIVER: FORFEITURE. While approval of the official bond of a state officer is not necessary to its validity as against the sureties thereon, but, as it is for the benefit of the public, may be waived, yet this waiver is for the state to make, and the unauthorized filing of a bond, without approval, does not preclude the state from claiming a forfeiture under said section 15, chapter 10, Compiled Statutes.

7. ———: ———: GOVERNOR: SECRETARY OF STATE. The governor,

not the secretary of state, is to approve the bond of a state treasurer. Hence, so far as the state is concerned, the filing of a treasurer's bond by the secretary of state, before it has been approved by the governor, does not dispense with the necessity of approval.

8. **Bond:** DELIVERY: PRINCIPAL: SURETIES: ENFORCEMENT OF FORFEITURE. Unless and until the state declares and enforces a forfeiture, such bond becomes effective as against the principal and sureties from the time of delivery to and filing by the secretary of state, whether it is approved or not.

9. **Approval of Bond:** IRREGULARITY. The approval of such bond after instead of before filing thereof is an "irregularity," within the purview of section 13, chapter 10, Compiled Statutes, and has no effect upon its validity.

10. **Quaere.** If such bond is so approved after filing, *quære* whether the approval may not be said to relate back to the time of filing, in the sense that it would waive the neglect to procure approval in the time fixed by law.

11. **Construction of Statute.** It seems a proper construction of section 15, chapter 10, Compiled Statutes, that the forfeiture therein provided is not incurred by failure to procure approval of an official bond within the time limited, provided such bond is filed in due time and is approved.

12. **Bond:** APPROVAL: ADDITIONAL SURETIES: CONSIDERATION. Approval of the bond in such case, and waiver of the forfeiture by permitting the principal to continue in and hold the office, is sufficient consideration for the undertaking of additional sureties who sign after filing, but before approval, for the purpose of procuring such approval and waiver.

13. ———: DELIVERY: ALTERATION: NEW BOND: LAST DELIVERY. A bond can be delivered but once. If after delivery it is altered by the addition of further sureties, and again delivered, there is in effect a delivery of a new bond, which will take effect as such from the date of the last delivery.

14. **Material Alteration:** RELEASE OF ORIGINAL SURETIES. Addition of further sureties upon a bond after its execution and delivery, without the consent or knowledge of the original sureties thereon, is a material alteration thereof, which will release such original sureties.

15. **Waiver:** FORFEITURES: CONSIDERATION: ESTOPPEL. A waiver is an intentional relinquishment of known rights, and, except in case of waiver of forfeitures, requires either consideration or the elements of estoppel.

16. **Material Alteration:** RATIFICATION. A material alteration, already made, may be ratified and adopted subsequently; and in such case the instrument, as altered, will be binding.

17. **Ratification**: NEW CONSIDERATION. It seems that such ratification does not require a new consideration, but it must be made intentionally with respect to the very alteration relied on as a defense.

18. **Official Bond**: SURETIES: RATIFICATION AND ADOPTION. Sureties upon an official bond which has been delivered, but not yet approved, who desire to have the bond approved and the principal retained in his office, may, to that end, ratify and adopt generally all alterations which may be required for the purpose; and if they choose to do so and expressly agree to remain bound notwithstanding, their knowledge of the exact condition of the bond when they so agree becomes immaterial.

19. **Written Waiver**: INTERPRETATION. A written waiver of alteration of a bond by addition of further sureties, executed by the original sureties thereon, imported on its face that the bond was incomplete and undelivered. It was in form a consent to the addition of any names that might be procured in the future, but also contained a provision that the original sureties "are held as if said names had not been added." Construing such waiver, *held*, that whether additional sureties signed the bond before or after execution of the waiver was immaterial, since (1) if the bond was, as the paper indicated, incomplete and undelivered, the sureties might withdraw at any time before. it was accepted, whether there had been an alteration or not, and (2) the fair interpretation of the instrument is that the sureties not only agreed generally to the addition of any further names that might be procured, until the bond was satisfactory to the state and was approved, but also ratified and adopted generally any and all alterations by addition of other names that had been made at the time they executed such waiver.

20. **Official Bond**: FILING WITHOUT APPROVAL: RATIFICATION AND ADOPTION: CONSIDERATION. Where the official bond of a state officer has been filed, but not approved, and the sureties on such bond, in order to procure its approval and prevent forfeiture of the principal's office, ratify and adopt an alteration made by adding other sureties after delivery, there is a consideration therefor, if a consideration were to be held necessary, and the sureties remain bound.

21. **Pleading by Attorney General**: APPARENT FORCE: THEORY OF LAW: TESTIMONY. A pleading drawn and filed by the attorney general on behalf of the state having been introduced in evidence as an admission, it is competent for him to testify to the theory of law upon which he drew and filed the same, for the purpose of explaining it and depriving it of its apparent force.

22. **State Treasurer**: EVIDENCE: BOOKS AND RECORDS. Books and records kept by a state treasurer and statements made by him and filed in the office of the auditor are prima-facie evidence

against the sureties upon his official bond.  They are not conclusive, however, nor are the sureties confined to impeachment of such books, records and statements; but they may show the facts as to when the defalcation occurred, and the amount thereof, in any way and by any testimony by which any other fact would be established.

23. **Time of Defalcation.**  In view of the several decisions in this cause, the sole remaining issue is whether the defalcation of the principal in the bond occurred during the last term, or in whole or part during his first term of office; and, if such defalcation occurred during his last term, the defendants are liable therefor.

ACTION brought by the state in the district court for Douglas county, before BAXTER, J., against William A. Paxton and others, sureties on state treasurer's bond.  The state and defendants Brown, McNish and Ames, separately prosecute proceedings in error.  *Reversed.*

*Frank N. Prout, Attorney General, Norris Brown* and *William B. Rose,* for the state.

*John C. Cowin, Frank T. Ransom, Robert Ryan* and *Frank Irvine, contra.*

*John C. Cowin* and *Robert Ryan* (*E. E. Brown,* also for himself), for plaintiffs in error, E. E. Brown et al.

POUND, C.

This cause is here for the third time.  Four petitions in error are presented,—one by the state, plaintiff below, and one each by Messrs. Brown, McNish and Ames, defendants below.  The several petitioners in error seek a review of the third trial of this cause, at which a verdict and judgment were had in favor of the state and adverse to said defendants Brown, McNish and Ames, and adverse to the state and in favor of the defendants Paxton, Swobe and Taylor.  The general features of the case fully appear in the two prior reports.  *State v. Bartley,* 56 Nebr., 810; *Paxton v. State,* 59 Nebr., 460.  Suffice it to say in this place that the defendants Brown, McNish and Ames were among those who signed the bond in suit originally, and
15

will be referred to hereinafter as the original sureties, while the defendants Paxton, Swobe and Taylor signed it subsequently and will be spoken of as the additional sureties.

Both the state and the defendants Paxton, Swobe and Taylor rely in large part upon the two prior decisions of this court, and invoke the rule that such prior decisions become the law of the case and are to be followed in subsequent appeals. As a general proposition, it is well settled that a decision of this court becomes the law of the case not only as to the points expressly considered in its opinion, but as to all matters necessarily involved in the judgment rendered. *Home Fire Ins. Co. v. Johansen*, 59 Nebr., 349; *Nebraska Savings & Exchange Bank v. Brewster*, 59 Nebr., 535; *Todd v. Houghton*, 59 Nebr., 538; *Hayden v. Frederickson*, 59 Nebr., 141; *Richardson Drug Co. v. Teasdall*, 59 Nebr., 150. This has been carried so far as to hold that it is not permissible for an appellate court, on a subsequent appeal of a cause, to reconsider and correct an erroneous decision made in the same case on a former appeal. *Wittenberg v. Mollyneaux*, 60 Nebr., 583. And the rule has been applied to decisions upon the sufficiency of evidence, when necessarily involved in a judgment here rendered. *Todd v. Houghton, supra.* But it refers only to questions expressly or necessarily adjudicated; and expressions of opinion respecting matters not actually involved in the decision reached, have no binding force. *Wittenberg v. Mollyneaux, supra.* Hence it would seem to follow that it has not the same application where the evidence at successive trials of the same cause is so materially different as to affect the conclusions reached. An adjudication resting on a particular state of facts is not an adjudication of the effect of materially different facts. The very purpose of a new trial is to ascertain the facts of the case anew. There is no requirement that the evidence be exactly the same and to exactly the same effect as at the former trial. Consequently, where the evidence at a new trial is or may be presumed to be materially dif-

ferent from that at a trial already reviewed by this court, in a subsequent review it will investigate the record uninfluenced by the former decision except so far as questions of law were there adjudicated which apply equally to the evidence at each trial. *Lane v. Starkey,* 20 Nebr., 586; *Missouri P. R. Co. v. Fox,* 60 Nebr., 531; *State v. Cass County,* 60 Nebr., 566; *First Nat. Bank v. Grosshans,* 61 Nebr., 575. In the light of these principles, as the attorney general contends that the first decision in this cause, in which a judgment in favor of all the defendants was reversed, is a final and conclusive determination that the bond sued on is a valid obligation as against and binding upon all the defendants, and that the second opinion of this court requires the same conclusion, while the defendants Paxton, Swobe and Taylor urge that the second decision of this court requires their release, an examination of the issues and evidence, and the matters passed on by the court in its judgments, at the two former hearings, becomes necessary. This examination must be made from the reported opinions and the record now before us.

The first decision is reported as *State v. Bartley,* 56 Nebr., 810. A verdict had been rendered in favor of a. the defendants, and judgment thereon was reversed on two points—that two of the instructions given by the trial court permitted the jury to find or infer facts of which there was no evidence, and that the verdict, in so far as it was based on a negative finding upon the issue whether there had been a breach of the bond, was contrary to the evidence, to the instruction of the trial court and to the law. Both of these points involved solely the question whether there had been a default on the part of the principal and a breach of the conditions of the bond. The instructions complained of bore upon that issue, and the verdict was set aside because that issue had not been determined correctly. We may remark, therefore, by way of summary: None of the defenses now before us were passed on at the first hearing; as to the defendants now in the case, the sole defense was that no breach of the bond

sued on had been established, or, at least, such was the only defense passed on; the judgment was reversed because the verdict on this defense was contrary to an instruction of the court and to the evidence, and because in submitting this defense to the jury the court permitted them to consider two questions upon which there was no evidence.

The second decision is reported as *Paxton v. State,* 59 Nebr., 460. At the trial there under review the district court directed a verdict for the state, and judgment was rendered against all the sureties accordingly. The petition alleged that the bond in suit was delivered to the governor on January 3, 1895, and on that day filed for record in the office of the secretary of state; that the bond was afterwards returned to Bartley, the principal therein, that he might obtain the signatures of additional sureties; and that on January 9 it was again handed to the governor, who then approved it and filed it with the secretary of state. The original sureties denied that the bond was filed on January 3, and contended that they were not bound because the bond had not been accepted and approved before that date,—that being the first Thursday after the first Tuesday in January of said year,—so that, under the decision in *State v. Lansing,* 46 Nebr., 514, the office to which the principal had been elected had become absolutely vacant before the bond was delivered. As to this defense, the court held that the evidence showed conclusively that the bond was not filed in the office of the secretary of state until January 9, and did not take effect till that day; that, while Bartley had forfeited the office by failing to have his bond approved and filed on or before January 3, the state could waive its right to oust him, and elect to deal with him as treasurer; that the statute as to official bonds was designed for the protection of the public and not for the benefit of the sureties, and consequently that the latter could not be heard to object that the approval and filing were not within the prescribed time. The defendant Brown contended further that the additional

State v. Paxton.

sureties signed without his consent, and that thereby he became released from his obligation. The evidence at the trial then under review had shown that the bond was not delivered till January 9. That being so, the court held that the written waiver hereinafter discussed gave rise to an inference that the bond had not yet been filed, and, as no officer had any right to demand additional sureties upon a state treasurer's bond after the same had been delivered and approved, the original sureties must have signed such waiver knowing, or at least believing, that the bond had not become effective. In such case, they either had notice of the alteration before delivery, or else consented to it after it was made and before delivery, and were clearly bound. The additional sureties, Paxton, Swobe and Taylor, claimed that the bond had already become effective and the principal had entered upon his office when their signatures were obtained, and that their undertaking was of no force for want of consideration. But as they signed prior to January 9, and the evidence then before the court showed that the bond was not delivered and filed and did not take effect till January 9, the defense failed. The judgment was reversed, however, because the sureties claimed further that the shortage occurred during Bartley's first term (they being bound, if at all, for his second term only), and the court directed a verdict for the state notwithstanding there was some competent evidence that the shortage, or portions thereof, took place during the first rather than the last term. Norval, J., dissented on points not now material, but held that the former decision, reversing a judgment in favor of the sureties, was an adjudication that the bond was a valid obligation, binding upon the parties and the court. To summarize: The evidence at the second trial was that the bond was delivered and hence became effective on January 9; the defense of the original sureties was that the bond failed because it was not filed in time, and the office had thereby become vacant; the defendant Brown claimed further that he was released because the additional sure-

ties signed without his knowledge or consent; the additional sureties claimed that the bond was complete, had been delivered, and had become effective before they signed, and that as to them there was no consideration; the defense of the original sureties failed because the state waived the forfeiture of Bartley's office, and the statutory provisions relied on were held to be for the benefit of the state, not of the sureties; the additional defense of the defendant Brown failed because the evidence showed the bond was not delivered till January 9, and the written waiver created an inference that he knew and believed the bond had not been delivered and was incomplete when he signed it; the defense of the additional sureties failed because the evidence showed that the bond was not delivered till January 9, or after they had signed it; and, finally, the judgment was reversed because a verdict was directed in the face of evidence sufficient to go to the jury tending to show a part of the shortage accrued during Bartley's first term.

In the record now before us, the petition, among other things, alleges that on the 3d day of January, 1895, Bartley "duly gave and executed a certain bond of office as treasurer * * * and thereupon the said defendants * * * delivered said bond to the plaintiff by delivering the same to the secretary of state and causing the same to be filed in his office for record, * * * and said bond was thereupon on the same date duly filed for record in the office of the secretary of state of the state of Nebraska." This allegation as to the date when the bond was filed, which the defendants contested on the second trial, seems to have been conceded at the last trial. They introduced no evidence to the contrary, and we have only the allegations of the petition and the fact that the bond bears the filing stamp of the secretary of state, showing that it was received and filed for record January 3, 1895, and recorded January 9, 1895, to fix the date. Undoubtedly, under general denials contained in the answers, the defendants might have proved or en-

deavored to prove that the bond was not filed until January 9. But they did not see fit to do this, and it would seem that the state, having fixed the date in its petition, is in no position to insist that a later date, not shown by the evidence, be taken. *Foley v. Holtry,* 41 Nebr., 563; *McKce v. Wild,* 52 Nebr., 9. It has been argued that we must not confuse the filing stamp or indorsement with the act of filing. But the indorsement is evidence that the bond was filed on the date named therein. *Peterson v. Taylor,* 15 Ga., 483; *Engleman v. State,* 2 Ind. [2 Carter's], 91; *Powers v. State,* 87 Ind., 144, 148; *Bettison v. Budd,* 21 Ark., 578, 580. Nor can the state insist that the fact that the bond is afterwards found in Bartley's hands and in the hands of the governor for approval demonstrates it had not yet been delivered, so long as the petition in effect alleges a withdrawal from the files after delivery and a return and recording thereafter. It is well settled that a return of a deed to the grantor for correction does not affect the original delivery. *Hyne v. Osborn,* 62 Mich., 235; *Albert v. Burbank,* 25 N. J. Eq., 404; *Meeks v. Stillwell,* 54 Ohio St., 541. In the same way, return of a bond to the principal in order that he may secure approval thereof, would not remove the effect of a delivery already made. Hence we must take it as settled, for purposes of the present hearing, that the bond was delivered to the secretary of state for filing and was filed on January 3. In this condition of the evidence, the additional sureties contended, and the court instructed the jury, that there was no consideration for the undertaking of those who signed after the bond had been filed and had taken effect and Bartley had entered upon his office pursuant thereto. Following this instruction, the jury returned a verdict for the defendants Paxton, Swobe and Taylor. The original sureties contended, among other things, that they were released by the addition of the further sureties after the bond had been filed. To avoid this, the state pleaded and proved the written waiver, considered and set forth in the second decision in this court. This

writing had been construed in that decision as importing
on its face that the bond was incomplete and undelivered
and that those who signed it so understood and believed.
Accordingly, as the evidence then before the court showed
that such was the condition of the bond at the time, the
court had passed upon the defense in question adversely.
But at the last trial, as the evidence showed that the bond
had been filed some days before this paper was signed by
the original sureties, they offered to prove by the defend-
ant Brown that the additional sureties had actually signed
said bond after filing, and before the written waiver was
signed, and that when the waiver was signed they were
ignorant of such facts. This offer was rejected and no evi-
dence of such facts was permitted to go to the jury. The
state complains of the instruction whereby the jury were
enabled to and did release the additional sureties, while
the original sureties complain, among other things, of
the exclusion of the evidence above described. To sum-
marize: No question expressly passed on by this court
at the first hearing is now presented; whereas the evidence
at the second trial showed that the bond was filed on
January 9, it now shows that it was filed on January
3; although the defense of the additional sureties
that there was no consideration for their undertaking, and
the defense of the original sureties, based on the addition
of other names after delivery, were made at both the last
trials, and were before this court at the second hearing,
the rulings then made with respect thereto were predi-
cated upon evidence which was held to establish conclu-
sively that the bond was delivered on January 9; and the
holding of this court at the second hearing, which might
seem to justify and require the exclusion of the testimony
offered by the original sureties at the last trial, proceeds
expressly upon the theory that the bond was undelivered
and incomplete when the written waiver was executed, as
that paper itself indicated.

For such reasons, and in view of the principles govern-
ing the application of the rule as to the effect of prior de-

State v. Paxton.

cisions as law of the case, already discussed, we are of
opinion that the sole possible occasion for invoking that
rule in the case at bar is to be found in the decision at the
first hearing, in which a general judgment in favor of all
the defendants was reversed.   It is manifest that if under
the evidence then before the court, the sureties, or any of
them, had an absolute defense and the bond was of no
force to hold them, the judgment of reversal could not have
been entered.   On the other hand, the questions of law
now before us are so nice, and depend so much in their
application upon delicate points of fact, that, without
knowing minutely what the evidence then was, we can not
say that any of the questions now presented were neces-
sarily involved in the first judgment of this court.   More-
over, there is no presumption that the evidence was the
same as that now before us.   *Missouri P. R. Co. v. Fox,* 60
Nebr., 531.  And, in any event, the very rule as to the effect
of prior decisions in the same cause must operate to pre-
vent us from giving to the first judgment in the case at
bar the effect now claimed for it.   At the second hearing
one of the judges expressly dissented on the ground that
the former judgment conclusively established the validity
of the bond and was binding upon the parties and the
court.  But the majority of the court took the other view,
treated the question as open, and passed on the defenses
involving invalidity of the obligation  on  their merits.
Here we have a clear adjudication that the first judgment
did not have the effect ascribed to it.   It is doubtful
whether we have any right to review that holding at this
time.  *Wittenberg v. Mollyneaux,* 60 Nebr., 583.  And, if
we have such power, we have no disposition to exercise it,
for we think the conclusion entirely sound.

Taking up the cause on its merits, we have first to con-
sider the defense of the three sureties who signed last.
Briefly restated, their contention is that the consideration
of the bond was that the principal be enabled to enter upon
his office and receive the benefits thereof; that the official
bond of a state treasurer becomes effective from the time

when it is filed with the secretary of state; and that, as the bond in suit had been so filed for several days prior to the time when they signed it, and was a complete and binding obligation already, by virtue whereof, as this court adjudged on the second hearing and the petition alleges, Bartley was already in office, there was no consideration for their undertaking. The bond of a state treasurer is governed by different rules from that of a county treasurer. In the latter case there is statutory warrant for demanding and taking additional sureties at any time. *Stoner v. Keith County,* 48 Nebr., 279; *Holt County v. Scott,* 53 Nebr., 176. In the former case, "no officer of the state is authorized to demand additional sureties of the state treasurer after his official bond has been duly approved and filed for record." *Paxton v. State,* 59 Nebr., 460, 471. Since private seals have been abolished in this state, bonds in general are governed by the same rule as simple contracts, and require consideration. *Keith County v. Ogalalla Power & Irrigation Co.,* 64 Nebr., 35. Statutory bonds, however, are an exception. A bond executed pursuant to and in substantial conformity with the provisions and requirements of a statute, needs no consideration. *Thompson v. Blanchard,* 3 N. Y., 335; *Carpenter v. Mather,* 3 Scam. [Ill.], 374; *Shirley v. Byrnes,* 34 Tex., 625; *Richards v. Morse,* 36 Me., 240, 241; *Sterner v. Palmer,* 34 Pa. St., 131; 6 Am. & Eng. Ency. Law [2d ed.], 684. But, in the case at bar, a bond, such as was required by the statute in every way except that it had not been approved, had been executed and delivered already. There was a statutory bond which had been effective for several days and upon which the sureties were holden, at least if the state chose to dispense with the requirement that it be approved. Consequently we are disposed to concede that, under the evidence now before us, the undertaking of the additional sureties required a new consideration. This must be so, whether we admit that the original bond required a consideration or not. If the contention of counsel as to the consideration of the original

bond were correct, it would certainly follow that the undertaking of the additional sureties, entered into after delivery, was collateral and would require a further consideration for its support. *Barnes v. Van Keuren,* 31 Nebr., 165. If, as we think, the original undertaking required no consideration, yet, after the statutory bond had taken effect by delivery, no second statutory bond could well be given. Certainly the statute will support but one bond for one official during one term of office. But if one such bond has been executed and delivered,—and it is not only the clear import of the statute, but the established law of this case that filing for record in the office of the secretary of state was a delivery (*Paxton v. State,* 59 Nebr., 460),—the subsequent addition of further sureties makes in effect a new bond which must have a foundation of its own. Such new or additional bond is not known to the statute. The parties doubtless intended to execute a statutory bond. But assuming, as we well may, that the facts here disclosed are much more than a mere "irregularity," which would be disregarded under section 13, chapter 10, Compiled Statutes, it would seem that the only principle that may be invoked, under the evidence now before us, is the well-settled one that an undertaking not within the purview of the statute may nevertheless be upheld as a common-law contract, if otherwise unobjectionable and supported by a consideration. *U. S. v. Hodson,* 10 Wall. [U. S.], 395, 4 Am. & Eng. Ency. Law [2d ed.], 671. Hence we agree with counsel for the additional sureties so far as they contend that a consideration for the undertaking of their clients must be pleaded and proved as the case now stands.

Do the pleadings and proofs disclose such consideration? In passing upon this question we must look narrowly at the several decisions of this court upon the statutory provisions governing official bonds, for the reason that very much depends upon the party who is invoking the protection of such provisions or is seeking to enforce them. Counsel cite us to the several opinions of this court

wherein it is held that after an official bond has been duly delivered, the sureties become bound and may not insist that it was not duly approved, and to the statements in a former opinion in this case that after a state treasurer's bond has been "approved and filed" no officer can demand additional sureties, and that after Bartley was "regularly inducted into office," no state officer could remove him. *Paxton v. State,* 59 Nebr., 460. These citations are relied upon as decisive. We do not so regard them. Because, in order to bind the sureties, if the state elects to dispense with approval,—a requirement designed for the benefit of the public alone,—delivery is sufficient of itself, it does not follow, when we look at the case from the standpoint of the state, that approval is an idle ceremony, not to be regarded in considering what the state might have done with respect to the office of treasurer between January 3, 1895, and the time when the bond in suit was approved. Nor does it follow that we may eliminate the words "approved" and "regularly" (which last includes approval of the bond) in the proposition laid down in the former opinion. These propositions had reference to evidence showing that the bond was approved prior to filing, the filing having taken place on January 9. Now we have a case in which the bond was filed on January 3, but was not approved for several days thereafter. In that respect, it is analogous to *Holt County v. Scott,* 53 Nebr., 176.

Under section 15, chapter 10, Compiled Statutes, an official bond must be approved, as well as executed and filed within the time fixed by law. The statute clearly contemplates that approval shall come before filing. None the less it is clear from *Holt County v. Scott, supra,* that the validity of the bond is not affected by filing without or before approval, if the state is content to dispense with the requirement. This does not mean, however, that the state must dispense with it. The approval of the bond after instead of before filing, so far as the sureties are concerned, would be a mere irregularity, within the purview of section 13, chapter 10, Compiled Statutes, and would

have no effect upon its validity. But the statute expressly and directly provides that neglect to procure approval of the bond shall render the office vacant. It is the intention of the statute that the official himself procure such approval before he files the bond. *Paxton v. State,* 59 Nebr., 460. The state may not insist on forfeiture. *Paxton v. State, supra.* But this does not imply that it can not do so, and the clear import of the statute and of the decisions cited is that such failure to have the bond approved renders the office vacant, if forfeiture is insisted upon, although the bond is duly executed and is filed within the prescribed time. The very ground on which the court holds that approval of an official bond is not necessary to its validity as against the sureties thereon, is that such approval is for the benefit of the public and may be waived. *Holt County v. Scott, supra; People v. Johr,* 22 Mich., 461. In *State v. Lansing,* 46 Nebr., 514, 522, the court said: "Actions upon bonds given out of time and direct proceedings to oust an officer for failing to qualify according to law present very different questions." This is reiterated in *Holt County v. Scott.* In *People v. Johr,* the court said: "And though, as between the people of the state and the auditor general, the latter may have had no right to waive the required approval of the sureties in this case, yet when the people in their corporate capacity sue upon the bond, * * * there is no principle * * * which prohibits them * * * from waiving the approval." If the requirement is for the protection of the state, it is for the state alone to waive it, and an unauthorized filing of the bond, without approval, can not preclude the state from claiming a forfeiture under said section 15, chapter 10, Compiled Statutes. The sole answer which counsel make to this proposition is the statement, to be found in the second opinion in the case at bar, that after Bartley was regularly inducted into office no state officer had the power to remove him. The statement is obvious and elementary. But it does not meet the case as it now stands. In *Holt County v. Scott* this court said: "To entitle one

elected to an office requiring an official bond to be inducted into office, his bond must be approved and filed for record before his induction, and within the time fixed by statute." And, citing *State v. Lansing,* 46 Nebr., 514, 522: "Section 15 clearly makes it the duty of the prospective officer to have his bond approved and filed. His neglect to perform these duties operates his forfeiture of the right to claim or hold the office." Pp. 190, 191. The language of the statute is explicit: "If any person elected or appointed to any office shall neglect to have his official bond executed and approved as provided by law, and filed for record within the time limited by this act, his office shall thereupon *ipso facto* become vacant." Compiled Statutes, ch. 10, sec. 15. Hence, to be regularly inducted, under the provisions of chapter 10, Compiled Statutes, Bartley must have had his bond approved as required by law. Unless and until he did so, he was in the same situation as the respondent in *State v. Lansing, supra.* The latter was in office. But a successor was elected and procured a judgment of ouster in *quo warranto* proceedings. If Bartley was in regularly, he was not to be removed. If he had failed to comply with the statutory requirements, he was liable to be ousted as was the respondent in *State v. Lansing,* at least until the defect was waived. For we think a distinction may well be made between total failure to comply with the statute in the time prescribed, as in *State v. Lansing, supra,* and a failure to perform all of the acts required where, nevertheless, the more important requirement of filing a bond has been seasonably met. In the one case it can hardly be said that the filing of a bond out of time would relate back to the date when it should have been filed. In the other case, the timely filing of a sufficient bond being the substance of the requirement, if such a bond is seasonably filed and afterwards proves sufficient and is approved, there is sound reason for holding that the approval relates back to the date of the filing. *Holt County v. Scott, supra.* This view of the provisions of the statute, however, which

State v. Paxton.

seems to follow from *Holt County v. Scott* and *Paxton v. State,* in no wise dispenses with the requirement that the bond be approved.  The state may and should insist upon it.

In *Paxton v. State* it is pointed out, and the statute clearly so provides, that delivery is to be made, not to the governor, but to the secretary of state.  The duty of the governor is to pass upon the sufficiency of the sureties. The duty of the secretary of state is to receive and file the bond when approved.  He ought not to file the bond until it is so approved.  Yet it is obvious that in fact he may do so, just as he may in fact neglect or improperly discharge any duty imposed on him.  And in such case the delivery of the bond is good and the instrument becomes effective from that date.  *Holt County v. Scott, supra.* But if the governor can only approve the bond, it is equally true that the secretary of state can do no more than receive, file and record it.  The governor, not the secretary of state, is to approve the bond of a state treasurer.  Compiled Statutes, ch. 10, sec. 6.  Hence, so far as the state is concerned, the filing of a treasurer's bond by the secretary of state, before it has been approved by the governor, does not dispense with the necessity of approval. Unless and until the state declares and enforces a forfeiture, such a bond becomes effective as against the principal and sureties from the time of delivery to and filing by the secretary of state; and, as we have seen, approval after instead of before filing is a mere irregularity which could not affect its validity.

What, then, is the effect of approval of a bond, filed in time, but not approved till after filing and after expiration of the time fixed by law?  In our opinion there would be sound reason for holding, if necessary, that in such cases the approval relates back to the time of filing in the sense, at least, that it waives the neglect to procure approval in the time fixed by the statute.  The bond was filed in due season.  It turned out to be sufficient and was approved.  Why should not this approval cure the defect?

In *Holt County v. Scott,* 53 Nebr., 176, 199, this court said: "There is another argument which might be urged as establishing the validity and potency of the bond in suit, viz., that, when filed in time, as was this one, a later approval relates back to the time of filing, and will be considered as done of that date. This is on the ground that where there are several acts which may be said to be concurrent, required to be done to make or complete a matter or thing, then the dominant act,—in this case, the delivery,—shall be preferred, and to it the other acts have relation. Supporting this doctrine are *State v. Tool,* 4 Ohio St., 553; *Drew v. Morrill,* 62 N. H., 23. * * * If there ever were cases in which the doctrine of relation should be invoked and apply, it is probably in actions of the nature of this." See, also, *Seymour v. Van Slyck,* 8 Wend. [N. Y.], 403. It should be observed, also, that we may well construe the statute to require only that the bond be filed in time and that it be approved. The language of said section 15 is that the officer shall "have his official bond executed and approved as provided by law, and filed for record within the time limited by this act." Consequently, if the bond is filed in time and is approved, whether before or after filing and whether in or out of time, there is ample basis in the statute for holding that the provisions thereof are fully complied with. In that view, subsequent approval of a bond seasonably filed would perfect the official's title to his office. He would be regularly in office and no one could remove him. But, however this may be, it is thoroughly settled that failure to procure approval in time, or even to procure it at all, may be waived. *Holt County v. Scott, supra; Paxton v. State,* 59 Nebr., 460. This is a waiver of a substantial power provided for the protection of the state. The state is not bound to waive it. A hasty, unadvised or collusive filing, without prior approval, can not be said to waive it; but obviously when it is waived, the waiver may be a consideration. Hence we think that the approval of the bond, in such a case, and waiver of the forfeiture by permitting

the principal to continue in and hold the office, is sufficient consideration for the undertaking of additional sureties, who sign after filing, but before approval, for the purpose of procuring such approval and waiver. We are unable to see that this holding in any way contravenes the very proper observation of SULLIVAN, J., in *Paxton v. State,* 59 Nebr., 460, 471: "No officer of the state is authorized to demand additional sureties of the state treasurer after his official bond has been duly approved and filed for record. Sureties signing under such circumstances are not bound, there being no consideration for their promise." This proposition is self-evident. As the opinion well puts the case: "The sole motive for giving the bond was to establish Bartley in the office of treasurer; and, if that end had already been accomplished, the procurement of additional sureties would have been an idle ceremony—a vain and useless act." So it would if Bartley was impregnably established in office. But, as we have seen, he was not so established until his bond had been approved. He could not establish himself in office beyond possibility of disturbance by filing an insufficient bond. The state could oust him, if it chose. Because the state might waive approval and hold the sureties it does not follow that it was bound so to do. The observations quoted are expressly predicated upon approval of the bond prior to the new undertaking. They do not imply that the governor might not insist on a better and stronger bond, before giving his approval, merely because the bond tendered had been placed on file.

The petition alleges delivery of the bond on January 3, the subsequent attempt to procure approval by the governor, the signing by the additional sureties on January 8, the approval on January 9, and proceeds: "And said governor, relying on said instruments in writing, \* \* \* as well as upon the said bond and the execution and delivery thereof by all the said defendants, approved said bond and permitted the said Bartley to continue in the office of said treasurer and enjoy the emoluments and per-

16

quisites thereof." This clearly states a consideration, and we think the testimony of Governor Holcomb tends to establish it. The court erred, therefore, in instructing that there was no consideration for the undertaking of the additional sureties, if they signed after the bond was filed; and by reason of that error the judgment in favor of the defendants Paxton, Swobe and Taylor should be reversed.

We come next to the rulings of the court upon the evidence offered by the original sureties. It will be remembered that the petition sets up a signing by the additional sureties after the bond as it first stood had been filed, but alleges that the original sureties, in order to procure approval of the bond and prevent forfeiture of the principal's office, signed written waivers whereby they consented and agreed to the additional signatures. It further alleges a redelivery after the additional sureties had signed and the bond had been approved. The testimony established that the bond was filed January 3, that the additional sureties signed after January 5, and that the bond was approved and refiled January 9. We think the theory of the pleader was entirely sound. A bond can be delivered but once. If after delivery it is altered by the addition of further sureties, and is again delivered, there is in effect a delivery of a new bond, which will take effect as such from the date of the last delivery. *Malarin v. U. S.,* 1 Wall. [U. S.], 282; *Prettyman v. Goodrich,* 23 Ill., 330, 331; *Stiles v. Probst,* 69 Ill., 382. In such a case, for reasons already set forth, there would doubtless have to be a consideration for the undertaking of the original sureties to remain bound. The petition alleges and the proof establishes that there was such consideration, in that it was entered into to procure approval of the bond and hold the principal in his office. But the original sureties insist that as they became bound and the bond took effect, as to them, from the date of filing, if the state chose to hold them, they would be released by the addition of further sureties after that date without their knowledge and consent, and if such was the

fact, and they were ignorant of it when they signed the waiver relied upon by the state, they can not be held to have waived an existing alteration, nor to have ratified and adopted the instrument as altered, by merely consenting to an alteration to be made in the future. Hence they contend that they should have been allowed to prove when the additional sureties signed the bond, and to show that the waiver was executed subsequently in ignorance of what had been done. Most of the propositions of law which are urged on their behalf may be conceded. It is obvious that the addition of further sureties upon the bond, after delivery, if without the knowledge and consent of those already bound thereon, was a material alteration which would release the latter from their obligation. *Stoner v. Keith County*, 48 Nebr., 279. It is true, also, that a waiver is an intentional relinquishment of a known right, and, except in case of waiver of forfeitures, requires either consideration or the elements of estoppel. "Knowledge of the existence of a right or defense, and the intention to relinquish it, must concur in order to estop a party by waiver." *Hamilton v. Home Fire Ins Co.*, 42 Nebr., 883; *Livesey v. Omaha Hotel Co.*, 5 Nebr., 50. It is not enough to show that there was a consideration. It must appear that the right was known and intentionally relinquished, or else that the circumstances are such as to create an estoppel. But there is another, and we think a better, way to look at the transaction in question. A material alteration already made, may be ratified and adopted subsequently, and in that case the instrument, as altered, will be binding. 2 Brandt, Suretyship & Guaranty, sec. 384. It has been held that such ratification and adoption of the altered instrument is, in substance and effect, a new agreement, and requires a new consideration. *Warren v. Fant*, 79 Ky., 1; *Wilson v. Hayes*, 40 Minn., 531, 42 N. W. Rep., 467. The weight of authority, however, seems to sustain the position that no new consideration is required. *Pelton v. Prescott*, 13 Ia., 567; *Montgomery v. Crossthwait*, 90 Ala., 553, 8 So. Rep., 498; 2 Brandt,

Suretyship & Guaranty, sec. 384. A recognition of the validity of the instrument, with knowledge of the alteration, will suffice. *Stewart v. First Nat. Bank,* 40 Mich., 348; *Jackson v. Johnson,* 67 Ga., 167. Ordinarily, of course, such ratification presupposes and requires knowledge of the exact facts. Such knowledge is one of the elements of any ratification. *Cram v. Sickle,* 51 Nebr., 828; *Henry & Coatsworth Co. v. Halter,* 58 Nebr., 685; *Bullard v. De Groff,* 59 Nebr., 783. As a consequence, acts which otherwise would amount to ratification of an alteration will not be given such effect if done in ignorance of the actual condition of the instrument. *Boalt v. Brown,* 13 Ohio St., 364; *Cutler v. Rose,* 35 Ia., 456; *State v. Churchill,* 48 Ark., 426, 444; *Benedict v. Miner,* 58 Ill., 19; *McDaniel v. Whitsett,* 96 Tenn., 10, 33 S. W. Rep., 567; *Bell v. Gardiner,* 4 Man. & G. [Eng.], 11. The ratification must be made intentionally, with knowledge of and with respect to the very alteration relied on as a defense. *Henning v. Werkheiser,* 8 Pa. St., 518. But we think it is no less clear that sureties upon an official bond which has been delivered, but not yet approved, who desire to have the bond approved and the principal retained in his office, may, to that end, ratify and adopt generally all alterations which may be required for the purpose; and if they choose to do so, and expressly agree to remain bound notwithstanding, their knowledge of the exact condition of the bond when they so agree becomes immaterial. This case presents, in substance, such a condition. The written waiver signed by the original sureties is set forth in full in the opinion in *Paxton v. State,* 59 Nebr., 460, 471. It was carefully considered in that opinion, and its proper construction was determined. It is the law of this case that the instrument imports on its face that the bond remained incomplete and undelivered, and gave the original sureties notice of such fact. If such was the fact at the time the waiver was executed, it clearly could not matter whether the names of further sureties were added to the bond before or after said date. *Paxton v. State,*

*supra.* But, even though the bond had been delivered and filed, yet if the sureties believed it to be incomplete and undelivered, so that they might withdraw at any time, whether there had been an alteration or not, and in this belief they made no attempt to withdraw, but took steps to remain bound, it is strong evidence that their purpose and intent was to ratify, adopt and approve all alterations —by adding other names—which their principal might have to make in order to procure approval and acceptance of his official bond. The terms of the waiver itself strongly confirm this view. Although in form a consent to the addition of any names that might be procured in the future, it contains also a provision that the original sureties "are held liable the same as if said names had not been added," which is of no apparent force or meaning unless it was intended to meet alterations already made. Under the circumstances surrounding its execution, we think the fair interpretation of the instrument is that the sureties not only agreed generally to the addition of any further names that might be procured, until the bond was satisfactory to the state and was approved, but also ratified and adopted generally any and all alterations by addition of other names that had been made at the time they signed such waiver. This being so, whether the additional sureties signed the bond before or after execution of the waiver was immaterial. If the bond had been filed but not approved, and the sureties, in order to procure its approval and prevent forfeiture of the principal's office, adopted and ratified an alteration made by adding other sureties after delivery, there was a sufficient consideration therefor, if a consideration were to be held necessary, and the sureties would remain bound. For these reasons, we think the court did not err in excluding the evidence offered.

A further defense was interposed, on behalf of all the defendants, to the effect that the defalcation of the principal in the bond occurred during his first term, and not during the second term, for which alone the defendants are

holden. In support of this defense they introduced a petition drawn and filed by the attorney general on behalf of the state, in which it was alleged that the defalcation took place during Bartley's first term, and that the sureties upon another bond were liable therefor. The attorney general who drew and filed said petition was called as a witness and testified, over objection, as to the theory of law upon which he proceeded. We know, without being told, that at the time he brought the action there was room for doubt as to the legal effect of certain phases of a settlement whereby Bartley became chargeable with moneys received during his first term. His testimony is: "In view of the two decisions of the supreme court, one in the *Jenal Case** and one in the case of *State v. Hill*,† I regarded the settlement referred to by you in your question as one involved in much doubt; under the *Jenal Case* I regarded it as insufficient; under the *Hill Case* I regarded it as sufficient. I did not know which view the supreme court would take when the case got there, and consequently I prepared myself for either view." The purpose of this evidence was to explain the petition relied upon by defendants as an admission, and to deprive it of its apparent force as such. The understanding with which an admission was made may always be shown to affect its weight. And this is no less true where misunderstanding of the law is asserted in explanation. *Prater v. Frazier,* 11 Ark., 249; *Solomon v. Solomon,* 2 Ga., 18; *Moore v. Hitchcock,* 4 Wend. [N. Y.], 292.

In charging the jury with respect to the issue whether the defalcation took place during the first or the second term of the principal, and upon the question of the amount for which the sureties were liable, the trial court stated that certain books and records kept by Bartley as treasurer, and certain statements made to the auditor, should be accepted as conclusive evidence of the matters appearing therein, unless the defendants impeached them and showed them to be incorrect. We think this instruction

---

* Cedar County v. Jenal, 14 Nebr., 254.    † 47 Nebr., 456.

was erroneous; and, in view of the decision in *Paxton v. State,* 59 Nebr., 460, and the character of the evidence relied upon by defendants on the issue in question, it must have been prejudicial. The defendants offered two petitions filed on behalf of the state in other actions, one of which alleged a shortage during Bartley's first term, and the other that the sum of $201,884.05, sued for in this action, among other items, was still in the Omaha National Bank, and had never been withdrawn therefrom. They also relied on an admission of Bartley's successor as to the whereabouts of such sum. In *Paxton v. State, supra,* it was held that these admissions were sufficient to make a case for the jury and that their weight was for a jury to determine. But the instruction in question had the effect of removing them from the case. It required the defendants to show that the books, records and statements were incorrect, and made the entries and items therein conclusive, unless successfully impeached. The jury may well have inferred that this must be done directly. In any event the instruction not only misstates the law, but amounts to a charge upon the weight of the evidence. The books, records and statements were prima-facie evidence only. They were not conclusive under any circumstances, nor were the sureties confined to impeaching them by showing that the entries therein were incorrect. They might show the facts as to when the defalcation occurred, and the amount thereof, in any way and by any testimony by which any other fact would be established. *Van Sickel v. Buffalo County,* 13 Nebr., 103, 120; *Albertson v. State,* 9 Nebr., 429; 2 Brandt, Suretyship & Guaranty, sec. 628. It is true that the relative weight of these entries as against the admissions relied on by defendants was very great. But the court had no power to charge upon this point, and no reasonable juror needed to be so informed. The instruction was so phrased as to convey to the lay mind an impression that defendants' evidence was of no force at all, because not directed to the books, records and statements themselves. **In no view can it be upheld.**

As this cause has been tried three times, and the several principles of law applicable to many phases of the testimony were elaborately worked out in a former opinion, it may not be amiss to say that, in our judgment, in view of the several decisions which have been rendered, but one issue is left to be tried. As we see it, the sole remaining issue is whether the defalcation of the principal in the bond occurred during his last term, or in whole or in part during his first term. If it occurred during his last term, all the defendants are liable therefor. This proposition has become the law of the case.

We recommend that the judgment be reversed and the cause remanded for a new trial as to all the defendants.

BARNES, C., concurs. OLDHAM, C., having been of counsel, did not sit.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and the cause is remanded for a new trial as to all the defendants.

REVERSED AND REMANDED.

HOLCOMB, J., took no part in the decision.

NOTE.—*Law of the Case.—Rule in Supreme Court.—Rule in District Court.*—The doctrine of the law of the case as applied to a reviewing court is: The determination of questions presented to the court become the law of the case, barring a re-examination upon a subsequent review. In *City of Hasting v. Foxworthy*, 45 Nebr., 676, Commissioner IRVINE reviews the previous decisions of this court upon this point and modifies the doctrine, holding that the court in such case should reverse its former ruling when manifestly wrong. This decision has subsequently been repeatedly practically, though not expressly, overruled. *Coburn v. Watson*, 48 Nebr., 257; *Fuller v. Cunningham*, 48 Nebr., 857; *Omaha Life Ass'n v. Kettenbach*, 55 Nebr., 330; *Mead v. Tzschuck*, 57 Nebr., 615; *Hayden v. Frederickson*, 59 Nebr., 141; *Richardson Drug Co v. Teasdall*, 150; *Wittenberg v. Mollyneaux*, 203; *Home Fire Ins. Co. v. Johansen*, 349; *Todd v. Houghton*, 538, *Leavitt v. Bell*, 595; *Wittenberg v. Mollyncaux*, 60 Nebr., 583; *State v. Commissioners of Cass County*, 566; *Barker v. Wheeler*, 470; *Motley v. Motley*, 593; *Missouri P. R. Co. v. Fox*, 531; *Chicago, B. & Q. R. Co. v. Yost*, 61 Nebr., 530; *Anheuser-Busch Brewing Ass'n v. Hier*, 582; *Smith v. Neufield*, 699, 701; *Holt v. Schneider*, 370; *Perry v. Baker*, 841; *Bank of Stockham v. Alter*,

359; *School District v. Fiske*, 3; *Barton v. Shull*, 62 Nebr., 570. And even
in a criminal prosecution. *Argabright v. State*, 62 Nebr., 402. This
rule of law of the case does *not* apply to nisi-prius courts. *Perry
v. Baker*, 61 Nebr., 841, 845. overruling *Marvin v. Weider*, 31 Nebr., 774.
—W. F. B.