# ELIAS B. STILES *et ux.*

## *v.*

## GEORGE PROBST.

1. DEED—*what requisite to delivery.* It is an essential prerequisite that the deed or instrument in question should be understood by the parties to be completed and ready for delivery, in order to have a mere placing of it in the hands or possession of the grantee or his agent construed into a delivery.

2. SAME—*recording by grantor, when not a delivery.* Where a deed or mortgage, purporting on its face to be the joint instrument of the grantor and his wife, but which, in fact, was not executed by the latter, was recorded by the grantor, and retained by him for several years thereafter, when the same was executed and acknowledged by the wife, and then delivered, it was *held,* from the fact that it was the intention of both parties that the instrument was to be executed by the wife, that it could not be regarded as delivered until after its execution by the wife.

3. SAME—*of husband and wife—acknowledgment of the latter under act of* 1869. Under the act of 1869, many, if not all, the formalities required, and recording if required, by former statutes in respect to deeds of married women, are dispensed with. But it is still indispensable that the wife join with her husband in the execution of the deed, though it is not required that she shall, in order to join with him, execute it at the same time. She may execute the same years after her husband, and if it is then delivered, it will be good.

4. SAME—*whether there may be a second delivery.* While it is true there can be but one delivery of the *same* deed, yet if the deed after delivery is altered by consent of the parties, by the wife of the grantor executing the same, and thereby releasing her dower, and then delivered, this will not be regarded as a re-delivery of the same deed, but of a new one, and the last delivery will be good, and the deed will take effect from such delivery.

5. ALTERATION—*when by consent, operates as a new contract.* It is a well settled rule, that an alteration, even in a material part, may be made in a deed or note, and after execution of it is proved, or may be presumed, to have been made by consent of all parties, where they are competent to contract, it will take effect from the time of the alteration as a re-execution of it, or as constituting a new contract.

APPEAL from the Circuit Court of Lee county; the Hon. WILLIAM W. HEATON, Judge, presiding.

Messrs. EUSTACE, BARGE & DIXON, for the appellants.

Mr. JAMES K. EDSALL, for the appellee.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

This was a bill in equity, filed August 31, 1871, in the circuit court of Lee county, by George Probst against Elias B. Stiles and Sybil C. Stiles, his wife, as mortgagors, to establish a mortgage upon certain lands situate in that county, which mortgage was alleged to have been lost, and to foreclose the same. Separate answers were filed by these defendants, denying the material allegations of the bill, and the husband setting up a defense in the nature of a set-off. Replication was filed, and the cause heard upon pleadings and proofs. A decree passed establishing the mortgage as against both defendants, finding the amount due, and in the usual form for foreclosure. From that decree defendants appealed to this court.

It appears from the evidence that Elias B. Stiles, being indebted to Probst in the sum of $4800, executed his note to him, November 24, 1860, of that date, for said amount, payable

two years from date, with interest at the rate of ten per cent per annum, payable semi-annually. Before maturity of this note, and to secure it, the maker signed, sealed and acknowledged, January 6, 1862, a mortgage to Probst on the lands in question, which mortgage was duly recorded in that county. December 1, 1863. This mortgage, as drawn, contained the name of Sybil C. Stiles, describing her as the wife of Elias B.. as joint grantor with him, and apt words to release her dower in the premises, but was not executed by her. It appears that Probst and Elias B. Stiles were intimate friends.

The record fails to show a delivery of this mortgage to Probst before it was executed by the wife. It was recorded, it is true, but the record does not disclose who caused it to be recorded. Stiles was a banker, but was in fact becoming financially embarrassed. It is fairly inferrible that he caused it to be recorded, because, immediately after, and for several years thereafter, he retained it in his possession. When this circumstance is considered in connection with the form of the mortgage, that is, the insertion of the wife's name as grantor with her husband, and what followed, the inference is irresistible that it was the intention of both debtor and creditor, from the first, that this mortgage was to be executed by the wife, and E. B. Stiles retained the possession of it for that purpose. So that it was not considered as complete until that was done. It may have been in the hands of Probst between 1867 and 1871, for some purpose connected with their dealings, which were extensive. "It is an essential prerequisite that the instrument in question should be understood by the parties to be completed and ready for delivery, in order to have a mere placing it in the hands or possession of the grantee or his agent construed into a delivery." 2 Wash. on Real Pr. 607.

We are satisfied, from the evidence, that about July 21, 1871, Sybil C. Stiles did in fact execute and acknowledge, before a competent officer, this instrument, and that such officer attached thereto a certificate of acknowledgment, in

due form, and it was then delivered by that officer, so executed, to Probst, with the consent of E. B. Stiles.

Appellants' counsel have not only filed an elaborate printed argument, but one of them argued this case orally at bar. The principal ground relied upon for the reversal of the decree is, that the mortgage having been executed and delivered by the husband to Probst, at the time of its execution by the former, it became operative thereby, and that consequently there could be no second delivery. For that reason, and the further reason that even if it had been signed and acknowledged by the wife, inasmuch as the statute made recording indispensable to a relinquishment of dower, and this had not been recorded after execution by her, it was invalid as to her, did not operate to release dower, and therefore the decree barring her dower was erroneous.

The execution by the wife took place in July, 1871. It was therefore governed by the act of 1869, then in force. That act provides that "any *feme covert,* being above the age of eighteen years, joining with her husband in the execution of any deed, *mortgage,* conveyance, power of attorney, or other writing of or relating to the sale, conveyance or other disposition of lands or real estate, as aforesaid, shall be bound and concluded by the same in respect to her right, title, claim, interest or *dower,* in such estate, as if she were sole and of full age as aforesaid, and the acknowledgment or proof of such deed, mortgage, conveyance, power of attorney, or other writing, may be the same as if she were sole."

This act dispenses with many, if not all, the formalities of acknowledgment required, and of recording the instrument, if required by the former statutes in respect to deeds of married women. But it is indispensable under this act that she should join with her husband in the execution of the deed, though it is not required that she should, in order to join with him, execute it at the same time. The question is, therefore, narrowed down to the inquiry whether, under the circumstances of this case, the wife can be regarded as *joining*

25—69TH ILL.

with her husband in the execution of this mortgage, though not done until years after it was executed by him, and there was such a delivery as made the instrument operative as to her.   Both of these points of inquiry are controverted by appellants' counsel.   They say, the mortgage was made and delivered by the husband January 6, 1862, and thereby vested the conditional estate in the grantee; that there can be but one delivery of the same instrument; and quote the rule as laid down by courts and text-writers to that effect.   Washburne says, what is obviously true, that a delivery is essential to give effect to a deed, and if once delivered, it can not, if valid, be defeated by any subsequent act, unless it be by virtue of some condition contained in the deed itself.   " Regularly, therefore, there can be but one delivery of the *same* deed, for if the first is effectual, the second can not be of any avail." And he gives illustrations of the application of the principle, as, where the deed is given by an infant, or one of non-sane memory, and therefore merely voidable.   There, it is said, a second delivery, after the disability is removed, would be simply void.   The reason is, that by the first delivery it took effect to a certain extent.   But where the delivery is by a *feme covert* and is void, then if she make a second delivery after becoming *discovert*, it will be good, and give effect to her deed.   2 Wash. on Real Prop. (2d Ed.) pp. 602–3.

Under this rule, it is true, that if the mortgage in question was complete, within the intention and understanding of the parties, and was delivered by the husband to Probst January 6, 1862, as claimed by counsel, a second delivery of the *same* instrument would be void.   But if the intention was as above stated, that the mortgage was not to be complete until the wife executed it, and so was not delivered, then this case does not fall within the rule; because then the delivery after the wife executed it, was not a second delivery.   Suppose, however, that we are wrong in that, and the mortgage was complete within the intention of the parties, was in fact delivered by E. B. Stiles in January, 1862, but by subsequent arrange-

ment between him and Probst in 1871, the wife was then to execute it, and did execute it, and it was redelivered by the consent of the husband. Would that be within the rule which renders a second delivery of the *same* deed void? If, in legal contemplation, it was still to be regarded as the same deed, it would be. But would it be regarded as the same deed? In this State a deed of a man or *feme sole* may be valid without acknowledgment. It is a well settled rule that an alteration, even in a material part, may be made in a deed or note, after execution, if it is proved, or may be presumed, to have been done by consent of all the parties, and they are competent to contract. *Woolley et al.* v. *Constant,* 4 Johns. R. 54; *Speake et al.* v. *U. States,* 9 Cranch, 98; *Barrington* v. *Bank of Washington,* 14 Serg. and R. 405; *Stephens* v. *Graham,* 7 ib. 505; *Smith* v. *Weld,* 2 Barr, 54; *Willard* v. *Clark,* 7 Metcalf, 435, 437; *Hills* v. *Barnes,* 11 New Hamp. 395; *Beary* v. *Haines,* 4 Wharton, 17. And a deed, when thus altered in a material part, takes effect from the time of the alteration as a re-execution of it. *Penny* v. *Corwithe,* 18 Johns. 499; *Tompkin* v. *Corwin,* 9 Cowen's R. 255. And it was held in *Bowman* v. *Nicholl,* 5 T. R. 537, that a material alteration of a bill or note after execution constituted a new contract. *Kershaw* v. *Cox,* 3 Esp. 246; *Jacob* v. *Hart,* 6 M. and S. 142; *Clarke* v. *Blackstock,* Holt, 474.

Surely, it can not be contended that, this being the sole deed of the husband, the execution of it by the wife, making her a joint grantor with him, and operating upon her right of dower, which was before unaffected by it, did not constitute a material alteration? If so, then it was not the *same,* but a *new* deed, taking effect from the time of the alteration, with the consent of Probst and E. B. Stiles, as a re-execution of it by the latter and an original execution by the wife. Such a case can not fall within the range of the principle of the rule forbidding a second delivery of the *same* deed, simply because it is not the same deed. Suppose a delivery to have been made in January, 1862, but, just before the

note matured, Probst and Stiles had come together and agreed upon an alteration, extending the time of payment five years and reducing the rate of interest to seven per cent, and having put that into the mortgage, it was re-delivered by Stiles to Probst, and by the latter again recorded. Would that second delivery be of the same instrument, and therefore void? No. It would be regarded as a new mortgage, taking effect from that time.

The question just considered is, in our view, the only debatable one in the case. The other questions are, each and all of them, susceptible of a ready answer, and we will not consume time by going over them.

There was a complete failure of proof as to the set-off, and the decree of the court below must be affirmed.

*Decree affirmed.*