CORA BELLE ABBOTT *et al.*

*v.*

GEORGE B. ABBOTT.

*Opinion filed February 20, 1901—Rehearing denied April 5, 1901.*

1. DEEDS—*effect of erasure of grantee's name after delivery.* Erasure of the grantee's name and substitution of another name, after final delivery of the deed, without the first grantee's consent, has no effect upon his title as against the party so substituted.

2. SAME—*effect of grantee's consent to substitution after final delivery.* If a grantee, after final delivery, consents to the substitution of another person as grantee for the purpose of transferring title, the deed is absolutely void as a transfer; nor can the first grantee, in such case, repudiate the change and claim title in himself.

3. SAME—*grantees may be substituted if deed is again delivered.* If both parties to a deed consent to the substitution of another person as grantee, after delivery, the deed will be valid if it is again delivered after the alteration.

4. SAME—*presumption of delivery of voluntary deed to minor is strong.* The presumption of delivery of a voluntary deed from father to infant child is strong, and the burden is upon the grantor to show clearly that there was no delivery.

Special concurrence by CARTER, J.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM HARTZELL, Judge, presiding.

This case comes from the circuit court of St. Clair county by appeal. Cora Belle Abbott and George B. Abbott were formerly wife and husband. On September 12, 1899, she filed her bill in said circuit court for a divorce, and later a petition for alimony pending the suit, in which petition she alleged that the husband owned real and personal property of the value of $40,000 and that he had an annual income of $5000. This petition was sworn to. She thereafter filed a bill for injunction to restrain the defendant from disposing of his property pending the suit. He answered the bill for divorce, as well as the petition for alimony and the bill for injunction, denying the allegations of each, and denying that he owned any property whatever, either real or personal.

On the 8th day of March, 1900, a decree of divorce was granted the complainant, and on the 23d day of the same month George B. Abbott, the husband, filed his petition in the same court, in the nature of a cross-bill, making Cora Belle Abbott, Beatrice Abbott, Fern Abbott and the firm of Bradford & Co. defendants, which bill was filed to the following April term. The prayer of that bill was, that the court decree the title to certain lands in Kansas the legal title to which was in the said Cora Belle, Beatrice and Fern, and also certain lots in East St. Louis the legal title to which was in the said Cora Belle, to him, the complainant. The allegations of this bill state the title of the property, as follows: "To one of the eighty-acre tracts in Kansas, and to the house and lot on Goethe avenue, in East St. Louis, in Beatrice Abbott, and another of said eighty-acre tracts of land in Kansas to Fern Abbott, and the third eighty-acre tract of land in Kansas, and also lots 154 and 155, aforesaid, in Cora Belle Abbott." It is further alleged that all of this property was formerly the individual property of the complainant, George B. Abbott, but that he had, with the consent of his wife, Cora Belle, placed the title in the

name of their said children, Fern and Beatrice Abbott, "in trust for the family of the petitioner."

On April 23, 1900, Cora Belle Abbott and Fern Abbott filed their answer to that cross-bill, admitting the granting of the divorce and the title to said real estate in them, the defendants, but denying that it had been placed in the names of said children, as alleged in the bill, to be held in trust for the benefit of said George B. and his family, and "they alleged the facts to be that said George B. caused the title to said real estate to be placed in said daughters for the purpose of hindering and preventing Cora Belle from ever having any interest in said real estate upon the dissolution of said marriage."

On the 28th day of June, 1900, George B. Abbott filed an amended cross-bill, alleging the divorce proceedings, and setting up that prior to the marriage between himself and Cora Belle he became the owner of the south-east quarter of section 18, township 21, range 1, west, in McPherson county, Kansas, and improved the same, and he and Cora Belle occupied it as their homestead; that after the marriage he acquired other real estate, the north half of the north-east quarter of section 19, in the same township and range, in said county, and also acquired lots 154 and 155, in block 2, in Illinois City, (part of East St. Louis,) and a part of block No. 210 of East St. Louis, fronting twenty-five feet on Goethe avenue; that all of said real estate was purchased with his own money; that neither the wife nor the daughters ever had any means of their own and never contributed to the purchase; that difficulties having arisen between himself and his wife, in order to pacify her he, in 1897, joined her in certain deeds of conveyance for said real estate in Kansas to their three children, Fern, Beatrice and Leslie; that in the conveyance of the west half of the south-east quarter of section 18 to Leslie Abbott there was a clause that in case of his death during his minority the title to the said premises should become vested in Fern Abbott;

that the deeds to Fern and Beatrice gave to Fern the east half of the one hundred and sixty acres above described and to Beatrice the north half of the north-east quarter of section 19; that said deeds were kept and held by the petitioner, and he continued in the control and management to the present time; that further trouble having arisen in 1899 between said Cora Belle and himself, he filed said deeds for record in the recorder's office in said McPherson county, Kansas, "and the title of record of said north half of the north-east quarter of section 19 is now in Fern Abbott, (evidently meaning the west half of the south-east quarter of the section;) that said Leslie Abbott died during his minority, leaving no children; that since said Fern became of age, he is informed and believes, yielding to the persuasion and influence of her mother, the said Cora Belle, she executed to her said mother a deed of conveyance for the said north half of the north-east quarter of section 19, etc., (evidently intended to be the west half of the south-east quarter of section 18,) and that the said eighty-acre tract now appears in said Cora Belle and that the legal title to the east half of said south-east quarter of section 18 appears in Beatrice Abbott; that on May 21, 1897, he purchased of the Highland Brewing Company said lots 154 and 155 in Illinois City, and paid the entire purchase money therefor, and received a warranty deed therefor from the said brewing company, which was delivered about the 25th day of May, 1897; that by said deed the said company conveyed said lots to him; that afterwards, by some person to the petitioner unknown, the grantee named in said deed was changed, as follows: The name of 'George B.' was erased and the name of 'Fern' interlined, making the grantee in said deed appear to be Fern Abbott instead of George B. Abbott; that the said deed was inadvertently filed for record and so recorded, showing the grantee therein to be Fern Abbott instead of the petitioner; that on February 20, 1900, Fern Abbott, yielding

to the persuasion of her mother, Cora Belle, executed to Cora Belle a deed of conveyance of said lots 154 and 155, which deed has been filed for record, etc., and the legal title to said lots appears of record in Cora Belle; that in 1897 he purchased said lot on Goethe avenue from one Paul B. Abt, and paid for the same, and erected a cottage on said property worth about $2000, and to satisfy his wife, Cora Belle, caused the deed to said lot to be placed in her name; that afterwards Cora Belle insisted on transferring the title to the same to their daughter Beatrice Abbott, who now appears of record to own the same; that all this time, and up to the present, the petitioner was the actual owner and in actual control of said real estate; that he paid for it all and does not own any other real estate anywhere, except a tract of one hundred and sixty acres of bottom land in McPherson county, Kansas, only partially improved, and encumbered by a mortgage for about $1300, which is being foreclosed; that he has no other property; that he is now forty-nine years of age and broken in health and spirits, and is wholly incapable to acquire property again, and if his wife and daughters are permitted to retain said property he will be penniless; that the title to said lots 154 and 155 never properly passed out of petitioner, but that the title of record which the said Cora Belle has is a cloud upon his title; that the legal title of all the rest of said real estate should be declared to be in the petitioner; that it is his by right and justice, and acquired by his means entirely." The prayer is that the court decree the title of all of said real estate to be in him.

The answer of Cora Belle and Fern Abbott was amended to apply to this amended cross-bill, and re-filed. On June 13, 1900, they filed in said cause their cross-bill or petition against George B. Abbott, alleging that Cora Belle is the owner in fee of said lots 154 and 155 and is entitled to the rents and profits thereof; that she is the guardian of Beatrice, who is the owner in fee of the said

twenty-five-foot lot on Goethe avenue and the eighty-acre tract in Kansas, the north half of the north-east quarter of section 19, township 21, range 1, west; that Cora Belle is the owner in fee of said eighty-acre tract in Kansas, the west half of the south-east quarter of section 18, township 21, range 1, west, and entitled to the rents thereof; that Fern is the owner in fee of the east half of the south-east quarter of section 18, township 21, range 1, west, in McPherson county, Kansas, and is entitled to the rents and profits thereof; that at the January term, 1900, Cora Belle was granted a divorce from said George B. Abbott and given the care and custody of the said Beatrice, and that no provision was made in said decree for the support of said Cora Belle and said Beatrice, and that she is wholly without support for herself and said minor daughter, except the rents from said lots 154 and 155 and said house on Goethe avenue and said Kansas lands; that said Fern is entirely without means of support, except the said real estate described in Kansas and the rents thereof; that L. D. Abbott and H. M. Bradford claim a lien on said lots 154 and 155, but that said claim is fictitious, and then charges a combination and conspiracy between them and the said George B. to prevent her, Cora Belle, and Beatrice, from collecting and receiving the rents from said property; that in the divorce suit the court ordered George B. to pay Cora Belle alimony pending the divorce suit, which alimony he has persistently refused to pay. The cross-bill prays that defendant be required to answer the same, but not under oath; prays for an injunction to restrain George B. and Bradford & Abbott from interfering with the complainant in collecting the rents. To this cross-bill or petition George B. filed his answer, denying the claim of Cora Belle and Beatrice to the ownership of said property, and set up that L. D. Abbott and H. M. Bradford have a *bona fide* claim for a mechanic's lien upon said lots 154 and 155. This answer is sworn to.

The court, by its decree, divested Cora Belle of the title to lots 154 and 155 in East St. Louis, and also of her title to the west half of the south-east quarter of section 18, township 21, range 1, west, in McPherson county, Kansas, and invested said George B. Abbott with the title to all of said property. It also divested Beatrice Abbott of her title to the north half of the north-east quarter of section 19, township 21, range 1, west, in McPherson county, Kansas, and invested Cora Belle Abbott with the title thereto, and confirmed the title to the east half of the south-east quarter of section 18, township 21, range 1, west, in McPherson county, Kansas, in Fern Abbott, and confirmed the title to the lot in block No. 210, on Goethe avenue, in East St. Louis, in Beatrice Abbott, and perpetually enjoined George B. Abbott from collecting, or attempting to collect, the rents due or to become due from the premises the title to which it decreed to be in Beatrice Abbott, Fern Abbott and Cora Belle Abbott, and decreed that George B. Abbott pay the costs of the suit. From that decree Cora Belle Abbott and Beatrice Abbott prosecute this appeal, and assign for error the decree divesting Cora Belle of the title to said lots 154 and 155 and the title to the west half of the south-east quarter of section 18, township 21, range 1, west, in McPherson county, Kansas, and investing the title thereto in the said George B. Abbott, and also the decree divesting Beatrice Abbott of her title to the north half of the south-east quarter of section 19, in said township and range, in McPherson county, Kansas, and investing the title thereto in Cora Belle Abbott. Other facts appear in the record, but they are not material here.

DILL & WILDERMAN, and B. O. DAVIDSON, for appellants.

HAMILL & BORDERS, and TURNER & HOLDER, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The attempt to engraft this suit, by cross-bill, upon the divorce proceeding after the decree in that action had been rendered was wholly irregular. The sworn allegations of the principal parties in the petition for alimony *pendente lite* and bill for injunction, and the answers thereto, as well as the testimony in support of and against these allegations, are irreconcilable with the claim of each of them to the ownership of the property here made. These matters are not, however, now of controlling importance.

The claim of L. D. Abbott and H. M. Bradford, denied in the cross-bill of Cora Belle and Fern Abbott, was a mechanic's lien for labor and material in erecting improvements upon the East St. Louis property, and was abandoned before the final hearing. There is no controversy in this court, nor was there below, between Cora Belle Abbott and the daughter Beatrice as to the title to the north half of the north-east quarter of section 19, township 21, range 1, west, in McPherson county, Kansas, and, confessedly, so much of the decree as divests the title of the daughter to that tract and vests it in the mother is erroneous, and counsel for appellee say that it was inserted by inadvertence. The only issue, therefore, submitted to us for decision is between the appellant Cora Belle Abbott and the appellee, George B. Abbott, as to the title to lots 154 and 155 in Illinois City, (now part of the city of East St. Louis,) and to the west half of the south-east quarter of section 18, township 21, etc., in Kansas. This issue, if raised at all, is presented by the amended cross-bill of George B. Abbott filed June 28, 1900, set out at length in the foregoing statement, and the answers thereto. It is, as we understand, conceded,—at least it is not denied,—that if the title to the property described in the several deeds executed by George B. Abbott and wife vested the legal title in the grantees, their children, no sufficient reason, in law or equity,

is shown, either by the allegations of the bill or by the proofs, to authorize a court of equity to divest the grantees of that title and re-invest it in the grantor, George B. Abbott; and the decree below manifestly proceeds upon that theory by sustaining the title of Beatrice Abbott to the north half of the north-east quarter of section 19 and the Goethe avenue lot in East St. Louis, and the title in Fern Abbott to the east half of the south-east quarter of section 18 in Kansas.

If the finding and decree as to lots 154 and 155 can be sustained, it must be upon the contention that the evidence shows that the deed from the Highland Brewing Company, executed May 21, 1897, was changed after its delivery without the consent of George B. Abbott, as alleged in his bill. That the erasure of his name as grantee in that deed and the insertion in its stead of the name of Fern Abbott after it was delivered, without the knowledge, consent or procurement of the said George B. Abbott, would have no effect upon the validity of his title as between these parties, is too clear to become the subject of controversy. "Where a deed is altered by the substitution of grantees, it cannot support a claim to the land conveyed by the deed, asserted by the person whose name is substituted." (*Hollis* v. *Harris*, 96 Ala. 288; *Hill* v. *Nisbet*, 58 Ga. 586; *Wilds* v. *Bogan*, 55 Ind. 331; 1 Devlin on Deeds, sec. 469; *Robbins* v. *McGee*, 76 Ind. 381.) If the change was made after the delivery of the deed to George B. Abbott, even with his consent, for the purpose of transferring the title to his daughter, Fern Abbott, it would be ineffectual for that purpose and render the deed absolutely void as a transfer of the title. In that case, however, if George B. Abbott himself procured the change to be made he could not repudiate it afterwards and claim title in himself notwithstanding the alteration, and, therefore, to sustain his contention that the title is still in him, he must have shown by proofs that such title vested in him by a delivery of the deed prior to the

alteration, and that he did not make the change or consent that it should be made. We are not able to see how it can be said, upon the evidence in this record, that he did not consent to or authorize the substitution of the name of his daughter for his own as the grantee in that deed. His own testimony is irreconcilable with any other conclusion. And that of the witness Guignon, who acted in the transaction for both parties,—the Highland Brewing Company and George B. Abbott,—tends very strongly to prove that the change was made by the consent of both the grantor and grantee. The question left most in doubt is whether the change was made before or after the delivery. It is doubtless true that the deed passed into the hands of George B. Abbott with his name inserted therein, but we think from all the evidence, and especially from that of Abbott himself and Guignon, and the correspondence between the latter and the grantor, the Highland Brewing Company, it is sufficiently shown that the change was made before the final delivery of the instrument and with the consent of both parties thereto. If a deed is altered after delivery, by consent of both parties, and again delivered after the change, the deed will be valid. (*Stiles* v. *Probst*, 69 Ill. 382.) It is impossible to believe, from the testimony in this case, that George B. Abbott did not know that the name of his daughter had been substituted for his own as grantee in that deed at the time he finally received and accepted it and when he caused it to be recorded.

As to the west half of the south-east quarter of section 18, etc.:. The deed from George B. Abbott and wife to their infant son, Leslie, contains the following clause: "*Provided*, and this deed is made with the express condition, that said G. Leslie Abbott shall not sell, nor deed, nor mortgage, nor lease for a longer term than one year at a time, the said land until he shall arrive at the age of forty years, but should he die prior to that time, then and in that event all of the above described real estate

shall belong to L. Fern Abbott, his sister, and her title thereto shall be perfect and absolute; and should he, G. Leslie Abbott, die, then L. Fern Abbott may sell or mortgage and give a good title thereto."

Counsel for the appellants, in their argument, seem to have anticipated a question—not raised by the bill—as to the sufficiency of this deed to convey the title to the sister, Fern Abbott, and have argued with ability, and, we think, successfully, in support of the proposition, "that where the fee in the first taker created by a deed is made determinable as upon the happening of a valid condition subsequent, followed by a limitation over of the fee or use to another upon the happening of the prescribed event, the fee or use shifts from the first to the second taker, whereby the deed is a conveyance under the Statute of Uses, as all our American deeds are, and is a clear case of shifting use." 2 Washburn on Real Property, sec. 285, 4 Kent's Com. sec. 296, *Smith* v. *Smith*, 23 Wis. 176, *Camp* v. *Cleary*, 76 Va. 142, *Outland* v. *Bowen*, 115 Ind. 150, *Cornwell* v. *Wolf*, 148 Mo. 545, and other authorities cited, support the proposition.

The question does not, however, arise on this record, there being nothing in the pleadings upon which to base it, nor is it controverted by counsel for appellee. Their sole contention is, that the proof shows that that deed was never delivered. The testimony of George B. Abbott, as well as the allegations of his bill, clearly shows that he executed these deeds to his children for the purpose and with the intent of placing the legal title to the premises described, in his children, then infants of tender years. That he kept the deeds in his own possession may be true, but he voluntarily put them upon record. And as to this deed to the son, he testified upon the hearing on the petition for temporary alimony that he actually delivered it to the child. The presumption in favor of the delivery of voluntary deeds to infant children is strong, and the burden is upon the grantor to

show clearly that there was no delivery. *Bryan* v. *Wash,* 2 Gilm. 557; *Masterson* v. *Cheek,* 23 Ill. 72; *Crabtree* v. *Crabtree,* 159 id. 342, and cases there cited.

There is another insuperable obstacle in the .way of the affirmance of the decree below as to this Kansas land. Both the original and amended cross-bills proceed upon the theory that the legal title to the Kansas land was vested in the children, the only claim being that they held it in trust for the benefit of the grantor and his family. There is no allegation that the deed to the son, Leslie, was not delivered, and even if the proof was as contended by counsel for appellee, it would avail nothing for the want of a corresponding allegation in the pleadings. Upon what reasoning it can be said that the title failed to pass to the son for want of a delivery of his deed, but that the title to the other tracts passed to the daughters, we are unable to perceive. The same allegations and proof as to the delivery of the several deeds apply to all of them, and, we think, fully sustain the finding and decree of the circuit court as to the conveyances to Fern and Beatrice. For like reasons it should have sustained the conveyance to the son, Leslie.

On the allegations and proofs in this record the decree below as to the eighty-acre tract of Kansas land and lots 154 and 155, vesting the title in the appellee, George B. Abbott, and also as to the eighty-acre tract owned by Beatrice, to which the title is vested in Cora Belle Abbott, must be reversed. In other respects it will be affirmed. The cause will be remanded to the circuit court with directions to enter a decree accordingly.

*Affirmed in part, reversed in part, and remanded.*

Mr. JUSTICE CARTER, specially concurring: While I agree that the decree should be reversed I think it should have been held that the court below had no jurisdiction over the lands in the State of Kansas, and no power to set aside conveyances of such lands or to vest or re-vest titles thereto in any one.