THE STANDARD TRUST AND SAVINGS BANK, Exr., Appellant, *vs.* JOHN A. W. FERNOW, JR., Appellee.

*Opinion filed April 24, 1925—Rehearing denied June 10, 1925.*

1. DEEDS—*alteration in deed after delivery cannot affect title.* Where title has vested in a grantee by delivery of a deed, an erasure or material change in the name of the grantee or the substitution of another as grantee cannot affect the title of the original grantee notwithstanding a second delivery after the alteration, and the grantee cannot divest himself of the title and vest it in another grantee by alteration or re-vest it in the grantor by destroying the deed. (*Abbott* v. *Abbott*, 189 Ill. 488, distinguished.)

2. SAME—*what alterations in grantee's name are not material.* The erasure of the Christian name by which the grantee is described and the insertion of his true name, or the addition of the word "Junior" to the name of the grantee, solely for the purpose of identifying him as the real grantee and not to change grantees, is not an alteration affecting the validity of the title.

APPEAL from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

JOHN W. ELLIS, for appellant.

GEORGE STEINBRECHER, and LEWIS S. EATON, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook county dismissing for want of equity a bill filed in that court January 18, 1924, by appellant, and granting the relief prayed in the cross-bill of appellee.

The bill filed alleged, in substance, that appellant was the duly qualified executor of and trustee under the will of John A. W. Fernow, Sr., who died September 2, 1922, leaving him surviving as his only heirs, John A. W. Fernow, Jr., his son, who is appellee here, and a daughter, Marie F. Leith; that under the terms of the will appellant

was to preserve the trust estate, collect the rents and profits and pay semi-annually one-half of the net income to the son and daughter during their lives; that included in the inventory of the estate was certain improved property in Chicago known as 2525 Indiana avenue, title to which was claimed by Fernow, Jr., by virtue of an unrecorded deed thereto in his possession, executed by Harry L. Schmitz. The bill sought to establish title in appellant. The bill was answered by Fernow, Jr., denying the several allegations of the bill, and later he filed a cross-bill praying title be decreed in him and his title quieted.

The facts developed upon the hearing are not in dispute and are substantially as follows: About October 3, 1917, John A. W. Fernow, Sr., who was a physician in Chicago, purchased the property here involved, and title was taken in the name of Harry L. Schmitz, who was then manager of the loan and real estate department of a Chicago bank. The property had improvements upon it and carried an encumbrance. On November 2, 1917, Schmitz and his wife executed a deed to the property, which instrument was properly acknowledged and delivered to the grantee, "John A. W. Fernow," but it was not recorded. Some time thereafter, about 1919, a lease to the premises was executed by Schmitz to the Chicago Postal Pneumatic Tube Company at a rental of $100 per month. The first rental checks were sent to Schmitz, and later, upon instructions, the company sent the rent remittances direct to Dr. Fernow and continued to do so until his death. At the time of the purchase of the property, Schmitz, who had known Dr. Fernow over fifteen years, had a talk with him, and when the deed was delivered the doctor said the property was to be John A. W. Fernow, Jr.'s. Schmitz said he called the doctor's attention to the similarity of the names of the father and son and that there might be confusion about it, and the doctor said that could be fixed. Schmitz had a later conversation with Fernow, Sr., and asked if he had done anything about

the deed, and the doctor said he had not. About two weeks before Dr. Fernow's death he telephoned to Schmitz, saying his son, John, was going to bring the deed over, and asked him to add "Jr." after the name "John A. W. Fernow." Schmitz told Fernow, Sr., that he would want something in writing from him authorizing Schmitz to do it, and the doctor said "all right;" that he would write something and send John over with it. Schmitz did not see the doctor then or thereafter, and stated Fernow, Jr., brought over the deed and a letter signed by his father. The letter was dated August 20, 1922, and the body of it was as follows: "Confirming my telephoned request of you yesterday, I want to state that my son John will call on you and present deed to real estate at 2525 Indiana Ave. It is my wish that you add 'Jr.' to my name thus transferring the title of this property to my son John." The deed received by Schmitz from the hands of Fernow, Jr., was the same instrument Schmitz and his wife, as grantors, had on November 2, 1917, executed, acknowledged and delivered to Fernow, Sr., conveying to the doctor the property here in question. Upon receipt of the deed and letter Schmitz gave the deed to a stenographer in the office, who added "Jr." after the grantee's name, making it then appear, "John A. W. Fernow, Jr." Schmitz did not consult his wife prior to having the change made nor did he tell her that such had been done, and did not have the instrument re-acknowledged. After the deed had been changed Schmitz handed it back to Fernow, Jr., and did nothing more. This deed was not recorded after "Jr." had been added thereto. The proof shows that after the death of Dr. Fernow one month's rent for the premises was paid by the tenant to appellant and thereafter it was paid to Fernow, Jr., after he showed the deed here in question to the manager of the tube company. It also appears from the testimony of a Chicago bank officer who knew and had several conversations with Fernow and his son, that the doctor, in talking about the Indiana

avenue property, said, "Oh, yes; I own that." The banker also said Fernow, Jr., never claimed to own the property. In a written statement made to the same bank during June, 1920, at which time the doctor was seeking some financial aid in connection with his building operations, Fernow, Sr., listed as part of his assets, "Equity 2525 Indiana Ave., $8000," and said further in the statement that he purchased the equity in that property and was then trying to buy the twenty-nine feet adjoining it on the south and offered $300 per foot for it. Another witness said Fernow, Sr., had said his son, John, was to have the property in question.

It is the contention of appellant that the deed of November 2, 1917, by Schmitz and his wife to Fernow, Sr., was a valid conveyance, and its subsequent alteration by consent of the grantor and grantee did not invalidate the title previously conveyed; that the deed having been altered by the substitution of a grantee cannot support a claim to the property made by appellee, whose name was so substituted. Appellee contends that the deed as originally made was delivered to him by his father during the latter's lifetime and was a valid conveyance to appellee, and that the addition of "Jr." to the name of the grantee did not invalidate the conveyance; that if the deed as originally made was not a valid conveyance to appellee, then the addition of "Jr." to the name of the grantee in the original deed, with the knowledge and consent of the grantor and grantee in said deed, and the re-delivery of the instrument to the appellee, makes the deed a valid conveyance to him.

We have previously set out herein the proof developed upon the hearing and concerning which there is practically no dispute. The evidence does not warrant appellee's first contention, that the original purchase was made and the conveyance therefor delivered to Dr. Fernow with the purpose of having title vest in appellee, nor was it so considered by his father. Dr. Fernow had supervision of the property from the time of its purchase. He represented

to one of his bankers that he owned the property and was then attempting to buy additional property immediately adjoining it, and if he considered the son the owner there was no occasion for the related activity in having Schmitz change the instrument of conveyance by inserting "Jr." after the name of the grantee.  Schmitz testified that at the time of the purchase of the Indiana avenue premises the doctor did not state for whom he was buying the property, but when he delivered the deed to the doctor the latter mentioned that it was to be John A. W. Fernow, Jr.'s property. However, when Fernow, Sr., by telephone communication requested "Jr." to be inserted in the original deed, almost five years later, Schmitz declined to do so without some writing from the doctor to that effect.  Moreover, at no time did Fernow, Jr., claim to own the property until after his father's death.  The determination of the case, in our judgment, depends solely upon the effect to be given to the insertion of "Jr." in the deed after the name of the original grantee.

A case much relied on by appellee is *Abbott* v. *Abbott,* 189 Ill. 488.  In that case the claim was made by George B. Abbott, the grantee in a deed for two lots, that after he had received a warranty deed his name was erased by some person to him unknown and the name of his daughter, Fern Abbott, substituted as grantee.  The court said if the erasure and substitution were made without the knowledge of the original grantee the same could have no effect upon his title. The court found from the proof that the alteration was made before the delivery of the deed, with the consent of both parties to it, and was delivered after the change was made, and that Abbott knew it had been made when he received it and when he caused it to be recorded.  It was held the deed vested title in Fern.  In the opinion of the court it was said arguendo, that if Abbott himself procured the alteration he could not afterwards repudiate it and claim title in himself; and the court also said, if a deed is altered

after delivery, by consent of both parties, and again delivered after the change, it will be valid. The case the court was considering did not come within that rule, and what was said in that regard was unnecessary to the decision of the case and contrary to the great weight of the authorities, which hold that the erasure of the name of the grantee in a deed and the substitution of the name of another person as grantee, even if done with the consent of both parties, cannot divest the title of the original grantee vested by the delivery of the deed, and a second delivery after the alteration cannot change the result. This is the substance of the rule as stated by the author of Tiffany on the Law of Real Property. (Vol. 2,—2d ed.—1603.) In connection with that statement of the rule the author says it has been said that if the original grantee procured the alteration he could not thereafter claim the title himself, but that could only be so if elements of estoppel were present.

We shall cite only a few of the many cases which lay down the rule stated by Tiffany. In *Carr* v. *Frye,* 225 Mass. 531, also reported in L. R. A. 1917-E, 814, the effect of the erasure of the original grantee's name from a deed which had been delivered and the substitution of another name as grantee by procurement of the original grantee was considered. The court held the substitution of another person as grantee did not divest the original grantee of the title nor transfer it to the substituted grantee. In that case the wife of the original grantee was substituted and after the alteration the deed was recorded. The court held the property remained the property of the original grantee although the record title was in his wife, the substituted grantee. To the case as reported in L. R. A. is an elaborate note, in which numerous cases are referred to, among them *Abbott* v. *Abbott, supra.* The author of the note says the statement by the court that if the original grantee procures the substitution he cannot thereafter repudiate it and claim the title, and that if the substitution is made after delivery, with the

consent of the grantor and original grantee, the deed, if again delivered, is valid, was *obiter*, because in the *Abbott case* the substitution was made before the deed was delivered to the original grantee.

The effect of alterations in deeds was considered in *Waldron* v. *Waller*, 65 W. Va. 605, reported in 32 L. R. A. (n. s.) 284. The alteration in that case was a change in the description of the property conveyed by the deed. In an extensive note to the case as reported in L. R. A. many authorities upon the subject are collected and briefly reviewed. The author of the note states, the general rule established by the overwhelming weight of authority is that no alteration after the deed has been delivered will have any effect upon the grantee's title, but there are a few decisions holding if the parties consented to the alteration it will be effective. *Abbott* v. *Abbott, supra,* is cited as stating that a deed altered after delivery by consent of the parties, and again delivered, will be effective as altered, but the author says that case should not be considered as an exception to the rule, as the condition in that case really called for a new instrument. As we have before stated, the case before the court in *Abbott* v. *Abbott* was not one where the deed was altered by consent of the parties after it had been delivered to the grantee and re-delivered after the alteration. Abbott based his claim of title on the proposition that the alteration was made after delivery of the deed to him and without his knowledge and consent, but the proof showed the change in grantee was made by agreement of the parties before the deed was delivered to Abbott. That the *Abbott case* was not to be considered as in conflict with the general rule was recognized by this court in *Osby* v. *Reynolds*, 260 Ill. 576.

This court has held that not every alteration made in a deed after delivery will be void, but there may be facts connected with some alterations which will justify giving effect to the alterations. In *Prettyman* v. *Goodrich*, 23 Ill. 330,

it was claimed a description of land had been inserted in a trust deed by the man who wrote it, after it had been executed, without the knowledge of the grantor, and the court was asked to declare the trust deed a nullity. The proof showed the description of the land was inserted in the trust deed with the knowledge and consent of the grantor, and after that was done the grantor, in company with the grantee's attorney, took the trust deed to the recorder's office to be recorded, and paid, or agreed to pay, the recording fee. The court held there was a second delivery of the deed and sustained it.

*Williamson* v. *Williamson*, 306 Ill. 533, is not authority in support of appellee's claim of title. In that case a deed was made by a mother to her son. Some time after the deed was executed, and before it was recorded, the grantor expressed dissatisfaction with the deed because it might leave her without a home. The grantee told her she was right and that he would fix it so as to protect her. Accordingly he had a clause inserted in the deed giving her the possession and use for her life. After the change was made the grantor expressed her satisfaction with it, and when she claimed the alteration invalidated the deed the court denied her claim and sustained the grantee's title, subject to the grantor's life estate.

*Stiles* v. *Probst*, 69 Ill. 382, was the foreclosure of a mortgage. The mortgage was made and delivered in January, 1862. As written it contained the name of the mortgagor's wife as joint mortgagor with her husband and release of her dower in the land but was not executed by her. In July, 1871, she signed and acknowledged the mortgage. The mortgagors contended the mortgage having been executed and delivered by the husband without his wife having signed it became inoperative and that there could be no second delivery. The court said the proof showed it was the intention of the parties from the first that the mortgage should be executed by the wife, and the husband retained

the possession of it for that purpose; that it was not considered by the parties complete until the wife had executed it. The mortgage was held to be a valid conveyance by husband and wife.

Adding the word "Junior" to the name of a grantee, solely for the purpose of identifying him as the real grantee, does not affect the validity of the title, (*Coit* v. *Starkweather,* 8 Conn. 289,) and the erasure of the Christian name by which the grantee is described and the insertion of his true name will not affect the deed. Such changes are regarded as not material.

In *Gibbs* v. *Potter,* 166 Ind. 471, 77 N. E. 942, the court had under consideration the effect of altering a deed by erasing the name of the grantee and substituting the name of another with the consent of the original grantee, the grantor, and the notary public before whom the deed was originally acknowledged. The court held the alteration was ineffective, and said: "It is well settled that alteration or destruction of a deed subsequent to its full execution, although done by consent of the parties will not divest the original grantee of title or re-vest such title in the grantor," citing many authorities.

In *Clark* v. *Creswell,* 112 Md. 339, 21 Ann. Cas. 338, a mother bought land, paid the purchase price therefor and had the deed made to her daughter. The deed was delivered to the mother. Before it was recorded the mother had the grantor insert the name of the daughter's husband also as a grantee. The deed was afterwards recorded. The court held the alteration was ineffectual to divest the original grantee of title conveyed to her by the deed or vest any interest in the grantee whose name was inserted as a grantee.

We will not extend this opinion by referring to more authorities. In the cases we have cited, and in the notes to some of them, will be found many other cases upon the subject. With few exceptions they are in harmony in holding that when title has vested in the grantee by the deliv-

ery of the deed he cannot divest himself of the title and vest it in another grantee, or re-vest it in the grantor, by an alteration or destruction of the deed. "When a person has become the legal owner of real estate he cannot transfer it or part with his title, except in some of the forms prescribed by law. The grantee may destroy his deed but not his estate. He may deprive himself of his remedies upon the covenants, but not his right to hold the property. This distinction has existed from the earliest times." *Clark* v. *Creswell, supra.*

The decree of the superior court is reversed and the case remanded, with directions to dismiss the cross-bill for want of equity and grant the relief prayed in the original bill.

*Reversed and remanded, with directions.*

---

(No. 16249.—Reversed and remanded.)
FREDERICK W. VON OVEN *et al.* Appellants, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellee.

*Opinion filed April 24, 1925—Rehearing denied June 10, 1925.*

1. RAILROADS—*a switch-track to private industry is subject to public use when connected with railroad.* Switch-tracks built for industrial connections with railroads, whether built at the expense of a railroad or the owners of the industry or at the joint expense of both, become, in legal contemplation, tracks of the railroad with which they are connected and are open to public use and subject to public regulations.

2. SAME—*owner of a private industry cannot build a railroad.* The owner of a private industry, such as a stone quarry, cannot lawfully build and operate a railroad or build a switch-track to a railroad and restrict it to a private use.

3. SAME—*when contract for construction and operation of a switch-track is not contrary to public policy—partition.* An agreement between a railroad company and the owners of stone quarries for the construction and operation of a switch-track over certain lots owned by the quarry owners is not contrary to public policy where it in no way affects the use of the switch-track by