THOMAS STRETCH, PLAINTIFF-APPELLANT, v. MARY J. WATSON, ADAH B. SOX, WALLACE A. HALTER, IDA HALTER AND VERNA STRETCH, DEFENDANTS-RESPONDENTS.

Argued May 1, 1950—Re-argued May 22, 1950—Decided June 27, 1950.

*Mr. Edward S. Miller* argued the cause for appellant.

*Mr. Robert G. Howell* argued the cause for respondents Wallace A. Halter and Ida Halter. *Messrs. Stanger & Howell,* attorneys.

The opinion of the court was delivered by

HEHER, J.   The primary question here concerns the legal effect of the alteration by defendant Verna Stretch of a deed of conveyance of farm lands at Shiloh in Stow Creek Township, Cumberland County, New Jersey, made and delivered May 22, 1941, by defendant Mary J. Watson to Verna Stretch and her husband, the plaintiff, by the substitution of defendant Adah B. Sox as the grantee.   The altered deed was recorded January 15, 1943.   A deed purporting to convey the lands to defendant Wallace A. Halter was made and delivered by Sox on February 13, 1943, and recorded two days thereafter.   The Chancery Division of the Superior Court dismissed a bill of complaint addressed by plaintiff to the old

Court of Chancery alleging that the alteration of the Watson deed was designed to defraud him of "his right, title and interest" in the lands as a tenant by the entirety, and that Halter "had full knowledge of the fraud" and had the same fraudulent intent, and praying that both conveyances be decreed void and that the lands be reconveyed "to the respective parties * * * found to be entitled thereto." An appeal from the judgment of dismissal taken by Halter and his wife, Ida, to the Appellate Division of the Superior Court was, before hearing, certified here on our own motion.

The Superior Court concluded that the alteration "avoided the deed." The principle invoked was that an alteration of this character "by one of two grantees named in a deed, unauthorized by the second grantee, serves to avoid it." It was found that the conveyance to the Stretches was in trust for their minor children, Mary Ellen and Thomas, Jr., but that, while it failed as an express trust for want of the manifestation in writing required by *R. S.* 25:1–3, the grantees were deemed to be constructive trustees to prevent undue and unconscionable advantage, and therefore plaintiff cannot maintain this suit for his individual benefit; and that even though plaintiff has an equitable interest in the property sufficient to sustain the suit, estoppel and laches preclude relief as against the Halters, adjudged to be purchasers without knowledge of the alteration of the deed, actual or imputed.

We concur in the finding of the Superior Court that the conveyance to the Stretches was in trust for their children. On January 13, 1941, plaintiff brought suit for divorce in the State of Nebraska; and a decree of divorce was entered on February 21st ensuing. A property settlement embodied in a stipulation of the parties was approved by an order entered in the cause. Thereby, the defendant wife quitclaimed to her husband her interest in real property situate at Lodgepole, Nebraska, and in the proceeds of the sale of a ranch at the price of $10,000. The husband transferred to his wife an automobile and $500; and he deposited $3,000 with the Clerk of the Court, "to be paid to the said Verna Stretch to be held

by her and used when necessary for the care and support of Mary Ellen Stretch and Thomas Stretch, minor children of the parties," the payments to be made in monthly installments as therein provided. This stipulation was approved by the court, "with an additional provision to the effect that in the event of the death of said two children, or in the event of their both becoming of age before the $3,000 fixed in said written settlement and paid" to the Clerk of the Court "is exhausted, * * * any balance then left shall become the absolute property of the defendant, Verna Stretch, and should be paid to her in bulk." On May 10, 1941, the plaintiff and his former wife jointly petitioned the Nebraska court in which the decree of divorce was entered for a vacation of the decree and for a restoration of "their former relationship of husband and wife, to the end that they may more efficiently care for, rear, and educate their two minor children," and that "the marriage status of the parties, heretofore existing, be restored to them" and "the Trust Fund, now in the hands" of the Clerk of the Court "released to both parties jointly." Thereby, the decree of divorce was "annulled, and held for naught, and the marriage status of the parties" restored to them; and the Clerk of the Court was ordered to "return to the parties jointly any sum, or sums, he may have in his hands as said Clerk by reason" of that decree. There was immediate compliance with the order to turn over the "Trust Fund;" and on May 15th ensuing the money was used for the purchase of the Shiloh farm, title to which was taken by them jointly. Thereafter, plaintiff and his wife and the children lived together on the farm until January 15, 1942, when they again became estranged and plaintiff returned to Nebraska without making any provision for the support of his wife and children.

The alteration of the deed did not void the estate conveyed nor enlarge plaintiff's title by destroying his wife's. The legal consequences of the subsequent alteration of an executory and an executed instrument are not the same. In cases of the first class, where there is an unauthorized alteration by one not a stranger to the instrument, not only is the

paper bereft of all efficacy as evidence of the right, but the right itself is destroyed; in cases of the second class, where the instrument merely evidences an executed transaction, and is a memorial of it, the rights thereby vested in the person who made the alteration are not destroyed or divested. *Kendall v. Kendall,* 12 *Allen* 92 (1866) ; *Bacon v. Hooker,* 177 *Mass.* 335, 58 *N. E.* 1078 (1901). The unauthorized alteration of a deed of conveyance of land, by a party to the instrument, cannot destroy a title or interest which has become vested under the deed, either by divesting the grantee of title or revesting such title in the grantor; but the executory provisions of the instrument are thereby rendered null and its covenants discharged, and no affirmative defense is maintainable upon the deed by the party who made the alteration. *United States v. West's Heirs,* 22 *How.* 315, 16 *L. Ed.* 317 (1860) ; *Gilbert v. Bulkley,* 5 *Conn.* 262 (1824) ; *Abbott v. Abbott,* 189 *Ill.* 488, 59 *N. E.* 958 (1901) ; *Clark v. Cresswell,* 112 *Md.* 339 (1910) ; *Carr v. Frye,* 225 *Mass.* 531, 114 *N. E.* 745 (1917) ; *Waring v. Smyth,* 2 *Barb.* (*N. Y.*) *Ch.* 119 (1847) ; 3 *C. J. S.* 913, 918; 2 *Am. Jur.* 624. At common law, the cancellation of a deed by consent of the parties will not divest the grantee of his title and revest it in the grantor. That can be done only by a reconveyance. *Wilson v. Hill,* 13 *N. J. Eq.* 143, 150 (*Ch.* 1860). Title to land, once vested in a grantee, in legal contemplation can be revested by the grantee in the grantor or his heirs or transferred to strangers only "by an appropriate documentary act." The underlying legal estate essential to the conception of a trust "is neither annulled or transferred by the loss of the deed that conveyed it or by withholding such deed from record or by both combined." *Lake v. Weaver,* 76 *N. J. Eq.* 280 (*E. & A.* 1909).

In *Jones v. Crowley,* 57 *N. J. L.* 222 (*Sup. Ct.* 1894), it is said that "if a deed be altered by the party to whom it belongs, even though in an immaterial part, such alteration avoids the deed as a conveyance." For that proposition, the cases of *Den v. Wright,* 7 *N. J. L.* 175 (*Sup. Ct.* 1824) :

*Vanauken v. Hornbeck,* 14 *N. J. L.* 178 (*Sup. Ct.* 1833), and
*Hunt v. Gray,* 35 *N. J. L.* 227 (*Sup. Ct.* 1871), are cited.
The rationale of these decisions is that of a punitive measure
essential to the discouragement of fraud. But if this rule
be deemed to do more than render the deed unenforceable in
its executory provisions and evidentially inefficacious, we think
it is not well grounded in reason and principle. An altered
deed of conveyance is not void *ab initio,* for title had vested
when the alteration was made. The grantee may annul the
deed, but he is powerless to destroy the estate which the deed
has vested in him. An alteration such as we have here does
not serve to convey title to the substituted grantee; nor could
the title revert to the grantor by the mere destruction of the
deed. The title may not be thrust upon the grantor without
his consent. Title must rest somewhere; and it cannot be
divested except in the mode ordained by the law. 26 *C. J. S.*
579. Certainly, such is the apposite rule here, for the rights
of the *cestuis* would be affected by the destruction of the legal
title which supports their equitable estate.

Yet, plaintiff's suit falls for want of a beneficial estate in
the *res.*

Plaintiff concedes that the deposit thus made with the
Nebraska court established a trust for his children; but he
insists that "the property settlement between the parties under
which the trust was established was clearly conditional upon
the finality of the divorce and expressly so stated," and "by
the terms of the instrument itself, the termination of the di-
vorce destroyed the stipulation and hence the trust."

The property settlement is not so conditioned. The stipu-
lation provides that the settlement should become effective
"in the event the court should grant a divorce," and that
meanwhile "the written documents" required for the consum-
mation of the settlement should be executed by the parties
and placed in escrow with one Kepler, of Sidney, Nebraska,
for delivery to the parties "when the divorce * * * shall
be granted," or destroyed or returned "to the maker * * *
in the event such divorce is not granted." When the decree

of divorce was entered, the papers held in escrow were delivered in consummation of the settlement, and the transfers of property and the money payments were made, including the deposit of the trust fund with the Clerk of the Court. There was no provision for a disposition of the property and the trust fund in the event of a vacation of the decree of divorce. Manifestly, that was a contingency not taken into account.

■ There is no sufficient basis in the proofs for concluding that the parties intended to terminate the trust: In petitioning the court to set aside the decree of divorce, the parties did not ask for a restoration of the *status quo ante* as to the property settlement in the event the decree was vacated, but rather that the "Trust Fund" in the hands of the Clerk of the Court be "released to both parties jointly." The order annulling the decree was in conformance with that prayer of the petition. It directed the Clerk to return "to the parties jointly, any sum, or sums, he may have in his hands as said Clerk by reason of the decree" of divorce. There was no provision for a restoration of the wife's property rights surrendered under the settlement, nor for a return of the transfers made to her. This course of action does not, in itself, signify a termination of the trust established by the parties, assuming that the court had the power so to provide without affording the *cestuis que trust* an opportunity to be heard.

■ And the subsequent conduct of plaintiff is revealing on this inquiry as to the existence of a common intention to terminate the trust. He lived with his family on the Shiloh farm but a short time, from April to January, and then he returned to Nebraska without providing for their support. His wife was obliged to take employment at Bridgeton, New Jersey, some five miles from the Shiloh farm; and she found that the safety and welfare of the children demanded that they all live in Bridgeton, near her place of employment. She conceived it to be for the best interests of the children to sell the Shiloh farm and use the proceeds for the purchase of a dwelling in Bridgeton. On January 14, 1943, the wife made

the substitution of the grantee in the unrecorded deed for the Shiloh property and, through the medium of the substituted grantee, sold and conveyed the land to Halter and used the proceeds for the purchase of the Bridgeton dwelling, taking title in her name as "Trustee for Mary Ellen Stretch and Thomas Stretch, Jr." Plaintiff discussed with the witness Crook and his wife, Katherine G., in advance of the event, his wife's intention to sell the Shiloh property and purchase a dwelling in Bridgeton in trust for the children; and he expressed approval of the plan. The Crooks were the owners of the Bridgeton property. On August 30, 1943, plaintiff again sued his wife for divorce in Nebraska; and on October 12th ensuing a decree of divorce was allowed. In the petition for divorce he stated that his wife had, "in some manner unknown to him," disposed of the Shiloh farm and "moved to town, where she is now living, in the State of New Jersey;" and that plaintiff "now owns no property of any kind or nature, except a small property in Lodgepole, Nebraska, of very little value." He expressed the belief that the children "would perhaps be better taken care of in the custody" of their mother, and consented that custody be awarded to her. He made no claim of title to the lands in question until the bill herein was filed on May 1, 1947. He admitted that he knew as early as April, 1943, of the sale of the Shiloh farm and the purchase of the house in Bridgeton and its use as a home by his wife and children. Thus, it is reasonably inferable that he viewed the trust as continuing and acquiesced in the use of the trust funds for the purchase of the dwelling in Bridgeton, to be held in trust for the children. At all events, he joined in the re-establishment of the trust in favor of the children when the final separation came. This is indicated, also, by his failure to make other provision for the support of the children.

Plaintiff does not hold a beneficial interest in the *res* under the Watson deed. In equity, he holds no more than the bare legal title as a co-grantee in trust for his children. Where an express trust fails for want of a written manifesta-

tion, equity may, through the formula of a constructive trust, grant relief against the unjust enrichment that would otherwise ensue. A constructive trust sometimes affords a remedy for the redress of a breach of an express trust; it is available also in various instances having no relation to express trusts. There may be a constructive trust where the retention of the property or the beneficial interest would constitute an unconscionable advantage by the holder of the legal title, even though its acquisition was not wrongful. Where the property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity holds him accountable as a trustee. Plaintiff was a fiduciary; and the principles of elemental justice forbade the use of the established trust fund for his own benefit. *Bohle v. Hasselbroch,* 64 *N. J. Eq.* 334 (*E. & A.* 1902). The confidential relationship may not be so abused. Equity charges the conscience of the holder of the legal title with a trusteeship for the benefit of the *cestuis que trust* and the duty of consummating their equitable ownership by a conveyance. The essence of the doctrine is that equity will not suffer the use of the Statute of Frauds as an instrument of fraud. *Moses v. Moses,* 140 *N. J. Eq.* 575 (*E. & A.* 1947). It goes without saying that since plaintiff's conscience is chargeable with a trusteeship for the *cestuis,* he cannot have the relief sought by the bill.

But we can go no further. It is familiar principle that equity will pursue property wrongfully converted by a fiduciary, or otherwise compel restitution. As between the *cestui* and the trustee and all persons claiming under the trustee otherwise than by a *bona fide* purchase for a valuable consideration without notice, actual or constructive, all property belonging to the trust, however much it may be changed or altered in character, continues to be subject to or affected by the trust. *Bohle v. Hasselbroch, supra.* Whether the rule of "trust pursuit" is applicable here is a question that cannot be determined until the *cestuis que trust* are made parties to the proceeding and afforded a hearing.

The judgment dismissing the bill of complaint is affirmed. The judgment "in favor of the defendants" Halter is reversed. The Halters interposed counterclaims for relief which the Superior Court found it "unnecessary to consider." And we cannot pass upon the issues thus raised without the joinder of the *cestuis* as parties.

*For affirmance and modification*—Justices HEHER, OLIPHANT, WACHENFELD and BURLING—4.

*For reversal*—Chief Justice VANDERBILT, and Justice CASE—2.